TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,

v.

H. B. LOGSDON, Appellee.

No. 6450.

Court of Civil Appeals of Texas.

Amarillo.

Dec. 20, 1954.

Rehearing Denied Jan. 17, 1955.

Crenshaw, Dupree & Milam, Lubbock (Max Addison, Lubbock, of counsel), for appellant.

Bob Huff and J. H. Splawn, Jr., Lubbock (Ted Odom, Lubbock, of counsel), and R. H. Munsterman, Levelland, for appellee.

PITTS, Chief Justice.

This is a Workmen's Compensation case in which appellant, Texas Employers' Insurance Association was the insurance carrier for Cactus Drilling Company, the employer by whom appellee, H. B. Logsdon, was employed on March 26, 1953, when he received alleged injuries as a result of a heavy bar striking him, for which he was awarded total and permanent disability benefits. As a basis for recovery, appellee alleged his injuries on such occasion for which he sought compensation at the rate of $25 per week for 401 weeks or a total sum of $10,025. Appellee further sought a lump sum recovery and by stipulation of the parties it was agreed that a lump sum recovery would be proper if a right to total and permanent disability benefits were shown.

The case was tried to a jury upon special issues submitted as a result of which judgment was accordingly rendered in favor of appellee for the lump sum of $8,926.12 as total and permanent disability benefits, from which judgment appellant has perfected an appeal. The appeal is predicated upon 9 points charging error because of the alleged refusal of the trial court to instruct appellee's counsel not to refer to or discuss the limited nature of the Workmen's Compensation Act; Vernon's Ann. Civ.St. art. 8306 et seq., alleged improper argument of appellee's counsel, jury misconduct, refusal to properly define the term "total incapacity," and the failure to submit certain special requested issues.

Before voir dire examination of the jury, appellant moved the court in writing to instruct appellee's counsel not to mention in the presence of the jury or read that part of his pleadings to the jury concerning the limited nature of the Compensation Act in connection with the provisions thereof limiting recovery to $25 per week for 401 weeks for total and permanent disability, a maximum of $25 per week for only 300 weeks for permanent partial disability, concerning the authorized one-third of the recovery as attorney's fees, or concerning the strained financial circumstances of appellee such as would warrant the recovery of a lump sum, if any recovery be shown for total and permanent disability, since in such event appellant admits a lump sum recovery would be proper. According to an approved stipulation, the trial court sustained that part of the motion concerning the authorization of one-third attorney fees in case of recovery, but overruled the remainder of the motion.

Appellant's counsel charges that the other objectionable matters set out in appellee's pleadings were read to the jury and a part of it again mentioned by appellee's counsel in his argument to the jury. Appellee's counsel emphatically denies that such objectionable pleadings were read to the jury and asserts that the trial court actually sustained appellant's motion pertaining to such matters and they were not read to the jury. Appellee's counsel further asserts that no evidence was offered in support of appellee's claim of a lump sum recovery, that no mention was made of such matters, and that his argument concerning other matters about which appellant here complains was invited by opposing counsel.

 It appears that appellant's counsel who briefed the case did not participate in the trial and would not, therefore, know personally what pleadings were read to the jury. We failed to find from the

record what pleadings, if any, were read to the jury. Before appellant should be heard to complain about objectionable pleadings having been read to the jury, it has the burden of establishing by some means reflected by the record that such were actually read to the jury. The stipulated bill of exception relied upon by appellant does not reveal that the objectionable matters were mentioned or referred to by appellee's counsel in the presence of the jury. Ordinarily, it may be presumed that all necessary pleadings were read to the jury in compliance with the order of proceedings in a jury trial but such a presumption will not support a challenge to the use of objectionable pleadings when such a challenge raises a controverted issue such as we have here. Appellant nevertheless contends that its motion should have been sustained in its entirety but in our opinion it fails to cite any authorities sustaining its contention. Under the record here presented, such contentions are not well taken. There was no question about appellee's injury. The extent of the injury and the duration of appellee's incapacity were the controlling questions. Appellee's original petition in general is in the usual form found in this type of case. As a part of his alleged cause of action, he pleaded the maximum weekly compensation rate of $25 for a period of 401 weeks and relied on such rate whether he was able to obtain total permanent disability benefits or permanent partial disability benefits. To contend that such an allegation is one of law has been held not to be sound. Federal Underwriters Exchange v. Bickham, Tex. Civ.App., 136 S.W.2d 880, syl. 14, affirmed 138 Tex. 128, 157 S.W.2d 356. In our opinion, it was not reversible error in the case at bar to mention or refer to such weekly compensation rate in the presence of the jury or to have read that portion of the pleadings to the jury, if such pleadings were read to the jury.

Concerning appellant's assignment of error charging improper argument before the jury by appellee's counsel in his closing argument, it should be observed that counsel has a right in such argument to make reasonable deductions from the evidence heard at the trial and to reply to arguments previously made by opposing counsel. The matters about which appellant here complains are set forth in two separate approved bills of exception too lengthy to be here incorporated. All of the arguments of counsel for both parties were set out in the approved statement of facts. We shall state from the record the chronological order of the pertinent matters as they occurred leading up to the closing argument of appellee's counsel challenged here by appellant.

The evidence reveals without objections that appellee was forty years of age, had grown up on a farm where he had worked since he was a lad until he entered the Army in 1942; that he spent more than three years in the European theatre of war where he was engaged in manual labor as a motor mechanic most of the time, putting in long hours particularly during an invasion; that he lived a hard Army life but was never bothered with disability, hence he never asked for or received any government disability benefits; that upon being separated from the Army, he engaged in hard labor and had been "roughnecking" in the oil field since 1946 until he received the injury in question while he was employed by Cactus Drilling Company, and was earning $108 per week, often with as much as $18 per week overtime pay added thereto.

Appellant's witness, Dr. William David Sharp, testified in part that he treated the injuries of appellee beginning on March 27, 1953, found "multiple contusions" of the face, chest and right knee; that he saw appellee again professionally on March 28, March 30, April 1, April 3, and occasionally thereafter until June 17, 1953, during all of which time appellee still had not recovered and was not able to work because of his injuries. Appellee testified at length about his injuries which resulted in disabilities for which appellant had not paid him anything, not even a dime. Other witnesses testified concerning appellee's injuries.

In his argument made to the jury, one of appellant's attorneys said, "Gentlemen, there is no question about the accident. We've never raised any question about the accident. Let's look at the facts and circumstances and see what is the extent and duration of that incapacity. The accident happened on March 26, 1953. He went to the hospital and saw Dr. Sharp * * *. Now, they talked about us haven't paid him anything, gentlemen, but let's see about that situation * * *. He, (appellee) is claiming total and permanent disability, which we say the facts and the evidence do not justify * * *". Another of appellant's counsel stated further in his argument to the jury, in part: "* * * and they holler about the insurance company not paying him one dime, if the report goes in 'no time lost,' they don't even keep a record of that in the office. They throw it away. The first notice that they had, if any, of this man being injured, was after he had employed his attorneys and they sent in a copy of the notice. And that was the first time that the insurance company knew anything about this man being hurt * * *". By their arguments, counsel for appellant have admitted the accident that resulted in appellee's injuries and that he was treated in a hospital by Dr. Sharp. They admit appellee's incapacity because of his injuries but they question the permanent duration of his incapacity. They assert that appellee was claiming total and permanent disability which appellant denies. Counsel also raised the question of notice, appellee's employment of an attorney and both of appellant's attorneys raised the question in their arguments, respectively, of whether or not appellant has paid appellee anything.

Next in order, Bill of Exception Number One reflects some of the closing argument of appellee's counsel about which appellant complains, together with the objections made thereto and the rulings of the trial court in connection therewith, as follows:

"Mr. Huff: Now that's three notices they had, but what did they do? They didn't have an excuse that he had been floating over the country like Doctor Sharp. He's been over there by Levelland every day. Those adjusters—that's their business. They've got plenty of time to come to court. That's their business to go out there and check and see and start paying him under the law. There's no question after they got their Notice of Claim they owed him. There's no question that they was paying this Doctor Sharp after they had their Notice—Doctor Sharp making those notations right along verbatim. He didn't seem any better along the line. On the 11th day of May, still—soreness in his ribs and back, headaches. On May 25th, still not yet ready to go back to work. June the 2nd, not able to work. Now, I'm reading reports from their doctor. Why weren't they paying him $25.00 a week? It's obvious to you gentlemen why.

"Mr. Milam: We'd like to object to that as being immaterial, irrelevant and prejudicial, and note our exception. You overrule it?

"The Court: Yes, sir.

"Mr. Huff: It's obvious to you gentlemen why that they weren't paying him. Certainly, they weren't. Under the law, they had a solemn contract that any man that got hurt up here on that job—that they would live up to the law—that they would pay what the law—and most of you gentlemen said you were familiar with it—$25 a week for 401 weeks;—

"Mr. Milam: Same objection and same exception.

"Mr. Huff:—and to this good minute you haven't paid him a dime. They've paid all of their money to their lawyers and doctors."

The further closing argument of appellee's counsel challenged by appellant, the objections made thereto and the court's ruling thereon as revealed in Bill of Exception Number Two is as follows:

"Mr. Huff: If we've done anything, we've overtried this lawsuit; and you've got a man that's out there and that's admitted in the evidence—$123.40 a week was what he was averaging the last five weeks he worked for this outfit. A man like that with that kind of a work record—a man that, if her's going to do any—speaking of claiming—a man that was over there three years and one month serving Uncle Sam—he didn't hit the ground and say give me this or give me that, give me $20.00 a week or give me $25.00; he hit the ground and said all I want is a right to make a living.

"Mr. Milam: We want the same objection and exception to that argument.

"The Court: Yes, sir."

The record reveals that in each instance appellant's counsel made a general blanket objection to the argument made by appellee's counsel without pointing out to the court the particular part of appellee's argument he considered improper and why such was deemed to be improper. The record reveals, in fact, that in each instance appellant's counsel reserved his exception without waiting for the trial court to have an opportunity to pass on the objections made.

 A careful examination of the record and particularly the bills of exception, including the qualifications therein made by the trial court inviting consideration of all the arguments and the evidence, reveals, in our opinion, that the closing argument of appellee's counsel here challenged did no more than to make reasonable deductions from the evidence heard or to reply to the arguments previously made by counsel for appellant concerning the very same matters in issue. However, a part of the argument set out in each of the bills of exception was entirely proper under the record presented, then it was encumbent upon appellant to point out to the trial court separately the objectionable argument being made by appellee's counsel

and state why it was objectionable. Otherwise, it was proper for the trial court to overrule the objections and reversible error is not shown in any event. Williams v. Merchants Fast Motor Lines, Tex.Civ. App., 214 S.W.2d 307; McClure v. Fall, Tex.Civ.App., 42 S.W.2d 821, affirmed, Tex.Com.App., 67 S.W.2d 231; Holt v. Collins, Tex.Civ.App., 131 S.W.2d 813, and other authorities cited by these cases.

 Appellant further charges that the argument of appellee's counsel in question was error because it informed the jury of the effect of its answers to special issues submitted. Such a charge is not well taken for the reason, first, it appears that no such complaint was made to the trial court by appellant in its amended motion for new trial. The matters appear to have been raised for the first time on appeal. At any rate, it is agreed that during voir dire examination of the jury eight members of the panel admitted that they were familiar with and knew something about the benefits provided for under the Workmen's Compensation Act, as well as the maximum length of time for total and permanent disability benefits and some of them admitted carrying Workmen's Compensation. Others are presumed to know the law. In his argument in question, appellee's counsel urged compliance with the law with a reminder made to the jury that most of them had said upon voir dire examination that they were familiar with the law authorizing $25 per week for 401 weeks. In our opinion, this statement or any other made by counsel in the argument challenged did not inform the jury of the effect of its answers to the special issues submitted. Assuming, however, that it did, it has been held that to inform the jury of that which it already knows does not prejudice the rights of a litigant and is not, therefore, reversible error. Finck Cigar Company v. Campbell, 134 Tex. 250, ·133 S.W.2d 759. It has also been held that to advise the jury of the effect of their answers is not reversible error if such effect is obvious to any juror of ordinary intelligence. Corbell v. Koog, Tex.Civ.App.,

188 S.W.2d 905; Grieger v. Vega, Tex., 271 S.W.2d 85.

"Before a judgment is reversed because of argument of counsel two things must appear: the argument must be improper, and it must be such as to satisfy the reviewing court that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." Aultman v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596, 599.

In our opinion, neither has been shown here. In the light of the whole record we believe the jury would in all probability have rendered the same verdict that was here rendered regardless of the argument here challenged and such is the test to be here applied. Lumbermen's Lloyds v. Loper, Tex., 269. S.W.2d 367. Appellant's complaints to the contrary are overruled. Texas Employers' Insurance Association v. Davis, Tex.Civ.App., 228 S.W.2d 257; Houston Fire & Casualty Insurance Co. v. Ford, Tex.Civ.App., 241 S.W.2d 158.

Appellant briefs its Fifth, Sixth and Seventh Points together complaining about jury misconduct and its alleged prejudicial results. It is charged that during deliberation of the jury, the panel was advised by one juror of a back injury operation he had after which he was not the man he was prior to the operation, and that other matters outside of the record were considered as evidence in violation of the court's charge and instructions given to the jury to be observed by it during its deliberations.

On a hearing of appellant's motion for a new trial it offered the testimony of two jurors. Appellee offered the testimony of four other jurors and tendered the remainder of the panel to the court and opposing counsel for examination if desired. A summary of the evidence heard reveals that one juror, being well acquainted with the jury foreman, asked if he (the foreman) did not once have a back injury. The foreman, being a man of much jury service experience, answered he did have but such a matter had nothing to do with that case and such must not be there discussed. Such a matter was not further mentioned. Other testimony was heard concerning the discussions had while the jury deliberated some seven or eight hours and the record reveals a few inconsistencies about matters that occurred. However, it is within the province of the trial court to reconcile any inconsistencies found in a juror's testimony at such a hearing. It is also an elementary rule of law that jurors as witnesses at such a hearing cannot preserve or destroy a verdict by testifying to the mental processes by which the verdict was reached. Viewing the testimony as a whole, it appears that the overwhelming weight of the evidence reveals that the jury considered nothing but the evidence heard at the trial in answering all of the issues returned upon which the trial court's judgment was based.

The trial court made no findings of fact on the issues of jury misconduct and the alleged prejudicial results thereof but simply overruled appellant's motion for a new trial. Under such circumstances, it must be presumed that the trial court made such findings as were necessary to support its judgment. Balque v. Green, Tex.Civ.App., 193 S.W.2d 705; Texas Employers' Insurance Association v. Hicks, Tex.Civ.App., 237 S.W.2d 699. Upon charges such as were here made, appellant had the burden of proving by a preponderance of the evidence that jury misconduct actually occurred concerning a material matter, which probably resulted in an injury to appellant, the complaining party. Rule 327 T.R.C.P. If the evidence is conflicting on the issues of misconduct in a case such as this, the decision of the trial court either way is final. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462; City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259; Maryland Casualty Company v. Hearks, 144 Tex. 317, 190 S.W. 2d 62. The latter case cited further holds that jurors, while deliberating in such a case, have a right to use their common knowledge and experiences in life in an-

swering the issues submitted to them. Under the record presented and the authorities cited, the trial court was justified in overruling appellant's motion for new trial. Appellant's points to the contrary are overruled. Stotts v. Love, Tex.Civ.App., 184 S.W.2d 308; Watson v. Texas Indemnity Insurance Company, 147 Tex. 40, 210 S.W. 2d 989; City of Dallas v. Hutchins, Tex. Civ.App., 226 S.W.2d 155.

██ In its eighth point, appellant charges error because the trial court refused to submit to the jury its requested definition of the term "total incapacity," yet appellant concedes that the trial court "submitted to the jury the usual definition of total incapacity," given in the following language:

> "By 'total incapacity' as hereinabove used does not imply an absolute disability to perform any kind of labor, but a person disqualified from performing the usual tasks of a workman to such an extent that he is unable to procure and retain employment is ordinarily regarded as total incapacity or totally incapacitated."

Appellant is correct in asserting that such is the usual definition given of the term. The definition of the said term as given by the trial court is substantially the same in language and absolutely the same in meaning as that approved by the Supreme Court in the case of Texas Employers' Insurance Association v. Mallard, 143 Tex. 77, 182 S.W.2d 1000. After there giving the same definition in substance that the trial court here gave, the Court said, "That is the standard definition of that term in this jurisdiction," citing numerous authorities in support thereof. The definition in substance of the same term has been many times approved. Aetna Casualty & Surety Co. v. Dickinson, Tex.Civ.App., 266 S.W. 2d 427; Traders & General Insurance Company v. Rischer, Tex.Civ.App., 210 S. W.2d 652; Federal Underwriters Exchange v. Ener, Tex.Civ.App., 126 S.W. 2d 769. For the reasons stated, we find no fault with the trial court's definition of the term in question.

In its Point Nine, appellant complains because the trial court refused to submit eight of its special requested issues inquiring about distinctly separate matters, each of which was separately presented to the trial court and separately considered and refused by it. The requested issues inquire about appellee's incapacity being due to arthritis, congenital conditions, other diseases and injuries previously received and various combinations of these troubles occurring prior to the date of appellee's injury. After stating all of its basis for complaint, appellant sought to brief all of them in a general way in two pages of its brief.

██ A point or assignment of error is multifarious when it embraces more than one specific charge of error or when it attempts in one point to attack several distinct and separate rulings of the trial court, as appellant has attempted to do in this instance, thus making its Point Nine multifarious and too general to be considered on appeal. Lofland v. Jackson, Tex.Civ.App., 237 S.W.2d 785; Darling v. Panhandle & Santa Fe, Tex.Civ.App., 209 S.W.2d 660; Johnson-Sampson Construction Company v. W & W Waterproofing Company, Tex. Civ.App., 274 S.W.2d 926. However, it is our policy to indulge a liberal construction in favor of the sufficiency of such a point in a brief and to give effect thereto if we can determine with some degree of certainty the nature of such complaint, although a failure to comply with the rules governing briefing on appeal does not meet with our approval. Since we are vested with discretion in the matter, we are here considering appellant's ninth point.

██ It appears that the trial court did inquire in Special Issue Number Twelve submitted to the jury in effect as to whether or not appellee's incapacity, if any, was caused by arthritis, wholly independent of any injury, if any, he received on the occasion in question and the jury answered it was not so caused. In our opinion, some of the said requested issues presented by appellant were sufficiently covered by the submission of Special Issue Number Twelve by the trial court and the jury's an-

swer thereto. We further believe the record does not support the other requested issues presented to the trial court and the same were properly overruled.

 Appellee presents a cross-assignment seeking a ten per cent penalty against appellant on the alleged grounds that the appeal was prosecuted for delay only, without any just cause for such appeal. In so contending, appellee relies on the provisions of Rule 438. In our opinion, the record does not justify such a penalty and appellee's cross-assignment is therefore overruled.

For the reasons stated, the judgment of the trial court is affirmed.