**TEXAS GENERAL INDEMNITY COMPANY, Appellant,**

v.

**Byron Clark BRIDWELL, Appellee.**

No. 6109.

Court of Civil Appeals of Texas.

Beaumont.

April 12, 1957.

Rehearing Denied May 1, 1957.

---

Fulmer, Fairchild & Barnett, Nacogdoches, for appellant.

Gordon R. Wellborn and Rex Houston, Henderson, McAllister & Benchoff, Nacogdoches, for appellee.

HIGHTOWER, Justice.

The judgment for plaintiff was based upon a jury verdict for total and permanent disability in a lump sum under our Workmen's Compensation Law, Vernon's Ann.Civ.St. art. 8306 et seq., and this appeal therefrom rests upon the following seven points of error:

1st. "The error of the trial court in overruling objection to the misconduct of appellee's counsel, Houston, in misquoting the record in his opening argument, by stating that appellant's witness, Dr. Allen, had never answered a direct question as to whether he would pass appellee for physical labor."

2nd. " * * * in overruling objection to the opening argument of appellee's counsel, Houston, misquoting the testimony of appellee's witness, Dr. Freiberg, as follows: 'We asked him the direct question, Doctor, do you consider the man's condition that you saw him in permanent?' He said, yes, 'I consider his condition permanent.'"

3rd. " * * * in not sustaining objection to the closing argument of appellee's counsel, Wellborn, misquoting the testimony of appellee's witness, Dr. Freiberg, and stating that Dr. Freiberg testified that, upon objective symptoms alone, he was able to say that appellee had an intervertebral disk and that, when he saw appellee, he was totally and permanently disabled for life."

4th. " * * * in not granting a new trial because of the misconduct of appellee's counsel, Wellborn, in re-emphasizing the misquotation complained of in appellant's Third point, when the trial court refused to take any action to stop the improper misquotation."

5th. " * * * in not granting a new trial because of the misconduct of appellee's counsel, Wellborn, in his closing argument, commenting upon the failure of appellant to produce appellee's neighbors to testify."

6th. " * * * in not granting a new trial because of the combined effect of the several improper arguments by appellee's counsel."

7th. " * * * in refusing Defendant's Requested Special Issue No. 1."

Bearing in mind, primarily, the following principles of law, we shall first endeavor to ascertain the merits of the appellant's first six points:

■ If the argument is of a nature or is made under such circumstances that if objection is made at the time, so that counsel can offer an explanation or make corrections which will make argument proper or harmless, of if the argument is of a nature that its withdrawal by counsel or instruction by the trial court to the jury to disregard the argument will cure the error and render effect of argument harmless, complaining party must object to the argument and request the trial court to instruct the jury not to consider it, and failure to so object waives the error. Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054.

■ The argument before the jury should be supported by a fair construction of the evidence, and an attorney purporting to quote the language of a witness, and not to draw a deduction therefrom, is under a duty to quote it correctly. Texas Emp. Ins. Ass'n v. Hale, 144 Tex. 432, 191 S.W.2d 472.

Before a judgment will be reversed because of argument of counsel, the argument must be improper, and it must be such as to satisfy the reviewing court that it was reasonably calculated to cause, and probably did cause, rendition of an improper judgment in the case. Rule 434, Texas Rules of Civil Procedure; Aultman v. Dallas R. R. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596.

Upon appeal all reasonable presumption and intendments will be indulged to support the verdict and judgment, and the court will consider the evidence and the inferences to be drawn therefrom in the light most favorable to the party who obtained them. 3–B Tex.Jur., p. 370, Sec. 911, and authorities there cited.

The record reflects the following testimony, on cross examination of one of appellant's witnesses, Dr. Walter Allen, to be germane to Point One:

"Q. Do you do examinations for companies who are seeking to employ people? A. Yes, sir.

"Q. Doctor, if a man came to you who had been hurt in his back, in an area—in the location between L–4 and L–5, he had been hospitalized on two occasions and a year had elapsed and he went to a specialist whose diagnosis was that he had an intervertebral disc, and his diagnosis was that he had atrophy in the left leg, that he had pain, obvious pain, upon movement, and this patient or this applicant told you that he was in constant pain and that he couldn't get in a positon where he would be comfortable a lot of the time; that he couldn't sleep at night and that he had tried to work and was in pain to where he couldn't, even though he had opportunity to—now, under that set of facts, you would reject this man for labor, wouldn't you? A. Depending upon where the facts came from, sir, and upon how much cooperation I had had out of the facts myself. I would have to know a little bit more about your facts, I think.

"Q. Take the facts I have given you, you wouldn't pass the man for labor, would you? In other words, you just couldn't pass a man for labor under those circumstances? A. I didn't say that.

"Q. Would you? A. I don't know, sir.

"Q. You won't tell the jury whether you didn't know? A. I don't know, sir."

In connection with the foregoing testimony, Mr. Houston, counsel for appellee, made the following argument to the jury:

Mr. Houston (speaking of the plaintiff): "As far as he must be able to procure a job—the next thing—before he can procure a job, one of these doctors must come tell you he would pass this man for physical labor. All right. That direct question was put to Dr. Allen. He never answered it for you yet."

After counsel for appellant had stated his objections to these statements, which objections were overruled, another of the counsel for appellee then stated to the court, in the presence of the jury, the following: "If he wants to make an exception, he can make one, but don't make an argument on our time." Such statement went unobjected to by appellant's counsel, but such counsel here contends that it augmented the harmful effect of Mr. Houston's statement.

Examining the testimony and argument under Point One in the light of the whole record we find the component parts of the hypothesis well substantiated. The witness himself was personally acquainted with some of its elements as appellant's company doctor who had examined Bridwell on at least two occasions prior to the trial. It is most obvious, from the record as a whole, that the court, the jury and Dr. Allen well knew the question alluded to appellee Bridwell's condition, and that the witness had refused to answer it. We believe the argument to have been proper, under the circumstances, at least as a rea-

sonable deduction from the evidence and not such as calculated to, or did, produce harm. The circumstances of the side-bar remark of which complaint is made, though not commendable, are without such merit as would affect the question.

The record reflects the following testimony and occurrences to be germane to Points Two, Three and Four, which are herein considered together. It appears to be conceded by both litigants that Dr. Freiberg was an orthopedic specialist by whom the plaintiff had been under examination for the purpose of enabling the said doctor to testify in his behalf at the time of trial, and that by reason thereof the trial court correctly ruled that his testimony must be limited to objective symptoms of the plaintiff entirely and that he must not take into consideration in giving his diagnosis any subjective symptoms or in anywise base such diagnosis upon anything the plaintiff may have related to him concerning his bodily condition, and it is to be noted from the following testimony and statements of appellant's counsel that he concurred in such ruling of the court.

"Q. Doctor, without telling the jury anything that Mr. Bridwell might have told you, go ahead now, if you will, and answer my question. I believe I asked you to tell the jury what your findings were on your examination. We can't relate anything Mr. Bridwell told you, of course. A. Patient stands with his back muscles taut. On flexing, he shifts to the right. Flexion is painful, as is extension. * * * When he bent forward, he had to pull over to the right. Right lateral bend was free; that is, bending straight to the right.

"Q. Now, doctor, then, from completely objective observations, tell the jury whether or not you could tell that Mr. Bridwell was in pain in these matters you have told us about. A. You cannot be absolutely certain, but we say it is semi-objective. I felt it was a true and legitimate complaint. * * * I believe I have trained myself fairly well over my years of practice, to tell

whether a man is making things up or is leveling with me. Other completely objective things are that there is loss of tone of the posterior thigh and calf muscles. They were flabby, they didn't have the firm feel they have on the other side and to an orthopedic specialist this loss of tone means muscle weakness in that area usually due to one or two things—nerve damage or muscle damage * * *. The left gluteal fold hangs lower than the right. That would also be a sign of loss of tone, or atrophy. The left calf is smaller in circumference than the right by one-fourth inch, left thigh one-half inch smaller. That is completely objective. * * * I felt he had a herniated disc."

Mr. Barnett, counsel for appellant, interrupting:

"Q. Doctor, is any of that diagnosis based partly on subjective complaints? A. Partly subjective, partly objective, yes.

"Mr. Barnett: Well, you appear to arrive at a diagnosis on the objective complaints alone * * *. A. I don't think it is possible to go completely just on a few objective findings. I think you will have to take the whole picture, both subjective and objective, and see that it fits together properly. I will say, certainly, partly on objective. Measurable atrophy, to me, is objective, or very subjective.

"Mr. Barnett: * * * You don't think it possible to make a diagnosis—A. Not completely.

"Mr. Barnett: —on objective symptoms alone, without considering the other? A. At times, you can.

"Q. How about this case? A. In this case, I have enough objective findings to be, say, very—not 100 percent certain of my diagnosis, but, at least, 50 percent to 75 percent certain.

"Q. You feel you can safely make a diagnosis in this case without relying to any extent on the history or the subjective symptoms? A. I would say this. If I

**136**

had not taken the history and just found these objective findings, I would be highly suspicious of the · diagnosis that I must make now.

"Q. But you wouldn't feel reasonably certain? A. I would like to confirm it by other things."

(No. X) Upon resumption of the direct examination, the witness again stated that his diagnosis determined the plaintiff to have a herniated disc; that at the time he saw him he did not believe he could do manual labor of any kind, and:

"Q. All right, now doctor, putting that on a percentage basis, let me ask you to tell the jury whether or not his disability or incapacity for him doing normal, physical labor, is total? A. At the time I saw him, I felt it was total.

"Q. * * * From your examination in July of this year, tell the jury whether or not his condition and his disability is permanent, in your opinion. A. I don't know whether it is permanent, frankly. I have seen patients get over this sort of thing, but most of them, where the duration has been of this length, require surgery before they get over it.

"Q. Now, in this case, Doctor, from the length of time which has gone by and from all your findings, tell us whether or not, in your opinion, from all those things, his condition is a permanent one. A. The odds are that it is, yes."

We have noted that during the course of this foregoing testimony that the doctor was cautioned three times by counsel for appellee to limit his testimony to objective symptoms. Also to be noted during the course of this witness' cross-examination is this question by appellant's counsel:

"Q. All right, Doctor, how, will you tell me, please—I believe the objective symptoms you found in this man, which led you to conclude that he had a herniated disc, was mostly confined to an atrophy of the

left leg? A. Yes, sir, those are the clearly objective findings.

"Q. Were there any other purely objective symptoms? A. Yes, one more, I should say. That is when he bent forward, his motion was not smooth, there was a hitch to the right associated with it, which is almost impossible to mimic. The muscles go into spasms." This witness further testified that the only objective findings that he found could have been the result of malingering, but that he did not believe such to be the fact in the plaintiff's case.

Further along in the record we find the following testimony to be relevant in connection with the argument complained of:

"Q. Doctor, did Mr. Bridwell tell you his left leg was smaller than his right one, or did you measure? A. I measured.

"Q. Did he tell you he had loss of muscle tone in his left leg? A. I felt it.

"Q. Did he tell you that his guteal fold was saggy—A. I saw it myself.

"Q. From your examination of Mr. Bridwell, did you find a single, solitary thing that gave you the opinion this man was faking or a smooth cookie, as Mr. Barnett said? A. No, sir, I didn't think he was trying to put it over on me. I didn't find anything that he was faking."

Based upon the foregoing testimony, another of appellee's attorneys, Mr. Gordon Wellborn, made the following statements in his closing argument to the jury:

"If you will, Dr. Freiberg, eliminate from your mind any subjective symptoms you may have acquired from this man by history or otherwise—tell this Nacogdoches County jury, sitting in judgment, what is your diagnosis from what you found with your hands, from what you saw with your eyes. Eliminate Bridwell from the picture and tell them what the trouble is. He tell you, 'Based on that, he has got an intervertebral disc, and when I saw him, he

was permanently and totally disabled for life. Is Gordon Wellborn misquoting the record, or am I hugging it." Whereupon defendant's counsel objected as follows: "You are misquoting it, and I object to it." The court did not rule on defendant's objection and Mr. Wellborn continued as follows: "I will stand on the record, and if this jury thinks I am misquoting it, call for the record when you go to the jury-room. You will see I am telling you what Milton Freiberg told you." It appears that no objection was made to this last quoted statement by appellee's counsel.

■ In connection with appellant's second point, we refer to that paragraph above numbered as "X" as being germane thereto and simply conclude that as a matter of pure grammatical construction Mr. Houston did not misquote the record, or that at least his argument was a fair deduction from, and a proper construction of, the record. True, the witness' statements as to the permanency of disability were conflicting and hesitant, but his reply to the direct question was nevertheless in the affirmative, although tinged with doubt, and the weight and credibility of his testimony was to be resolved by the jury.

■ In connection with appellant's third and fourth points, it is difficult to ascertain whether the above noted reply of counsel: "You are misquoting it, and I object to it," was a proper objection addressed to the court, or a side-bar remark to Mr. Wellborn's statement of the evidence. Although we are inclined to consider Mr. Wellborn's statement as a reasonable analysis of Dr. Freiberg's testimony, looking at it in its most favorable light, should we be in error in such conclusion (and now encompassing appellant's fifth point in our discussion), we conclude that the nature and extent of appellant's objection had the weight of no objection whatsoever. The remarks of appellee's counsel to the jury were of the nature that might easily have been cured by an instruction of the trial court to disregard and such instruction would have afforded appellee's counsel the opportunity also of retracting such portions of the argument as the court may have thought improper, as held in Ramirez v. Acker, supra. Furthermore, as is noted in Texas & P. Railroad Co. v. Hagenloh, Tex.Civ.App., 241 S.W.2d 669, 679, affirmed 151 Tex. 191, 247 S.W.2d 236, and authorities there cited, "As a predicate on which to base reversible error in improper argument of counsel which can be cured by a ruling of the court the complaining party must not only object to the argument but the objection must be pressed to the point of procuring a ruling. * * * 'it does not appear * * * that appellant pressed its objection to the point of a ruling, or that a ruling was specifically invoked, so as to support a contention here that the court committed affirmative error.' "

■ Germane to appellant's fifth point is that portion of the closing argument to the jury as disclosed by appellant's Bill of Exception No. 4, as follows: "Somebody is trying to mislead a Nacogdoches County jury now. Are you going to sit here, sitting in justice, and allow that to go on and take the rights of a hurt man from him based on that? It had been a year. He has got neighbors. People have seen him day in and day out, and the only way they could get any proof to try to show you that he was misrepresenting something was to mislead him, hide in the grass, take advantage of him and get him to do something so they could use it against him. Are you going to take the rights of a hurt man away from him based on that kind of trickery, fraud and deceit?"

Objection was made for the first time to the foregoing argument in appellant's amended motion for new trial, and it is presently contended, first, that objection was unnecessary for the reason that said argument was so prejudicial and harmful as to be of that nature which an instruction from the trial court to disregard would have failed to cure in the minds of the jury, it being appellant's position that the argu-

ment directly referred to the non-production of neighbor witnesses of the plaintiff not shown to be any more available to appellant than to appellee. Secondly, it is appellant's position that inasmuch as such argument was made after the court had overruled its objections to the matters complained of in Points Nos. 1 and 2 and after the court had failed to rule on its objection to the matter complained of under Point 3 that it was therefore not incumbent upon appellant to alienate the jury from its case by continually interrupting the offending argument, only to be rebuked by the action or inaction of the trial judge, citing Smerke v. Office Equipment, 138 Tex. 236, 158 S.W.2d 302; Service Mutual Ins. Company v. Blain, Tex.Civ.App., 135 S.W.2d 745 (dismissed); Robbins v. Wynne, Tex.Com. App., 44 S.W.2d 946; Traders & General Ins. Company v. Crouch, Tex.Civ.App., 113 S.W.2d 650 (dismissed).

Although we have heretofore overruled appellant's Fifth Point by virtue of the reasoning and authorities discussed under its 2nd, 3rd and 4th Points, it would appear to be straining the point to hold, even if objection had been made and overruled in regard to the argument complained of, that appellee's counsel was guilty of commenting upon the failure of appellant to produce appellee's neighbors to testify.

■ Perhaps it is proper to add that in each instance where counsel for appellant did specifically call his objection to the trial court, the court replied with the following language and instruction to the jury: "The objection is overruled. Ladies and Gentlemen, you will remember the testimony and what transpired during the trial." Such an instruction from the court fails to impress us as a comment upon the evidence in appellee's favor as contended.

In support of its Sixth Point, appellant urges the "cumulative effect" doctrine of Smerke v. Office Equipment, supra, but omitting those instances which we have held to be fair constructions of the testimony, and those which would have been rendered harmless, if they were harmful, by a proper objection and instruction to disregard, we fail to find any of appellee's arguments to meet the requirements for reversal as declared by Rule 434 and Aultman v. Dallas R. R. & Terminal Company, supra.

■ Appellant's Seventh Point, which complains of the trial court's refusal to submit to the jury appellant's specially requested Issue No. 1, is without merit and is overruled. The requested issue pertained to plaintiff's "average weekly wage earning capacity" subsequent to August 27, 1955. It could have become material only in the event the jury had found that appellee had suffered partial incapacity for which he was entitled to compensation. The jury made no such finding. Instead, they found the injury to be not partial for any length of time and also found that appellee was totally and permanently disabled. Under the findings made and the court's instructions, the jury was not required to, and did not, make any findings regarding the extent of partial disability; although proper issues were submitted in the alternative regarding partial disability, so if there was any error in refusing to give the requested instruction, a matter on which we express no opinion, it was harmless, in the circumstances.

The judgment of the trial court is affirmed.