**TEXAS GENERAL INDEMNITY COMPANY, Appellant,**

v.

**Glynn E. BLEDSOE, Appellee.**

**No. 13693.**

Court of Civil Appeals of Texas.

San Antonio.

Feb. 23, 1961.

Rehearing Denied March 22, 1961.

Cox, Wilson & Kennedy, Brownsville, Robinson, Strawn & Robinson, Raymondville, Chas. L. Cartwright, Houston, for appellant.

Hill, Brown, Kronzer & Abraham, Houston, for appellee.

MURRAY, Chief Justice.

This is a Workmen's Compensation case. The jury found that appellee, Glynn E. Bledsoe, while in the course and scope of his employment for Pan American Petroleum Corporation, on or about March 28, 1958, sustained an injury to his back, and that as a result of such injury appellee suffered permanent total incapacity. The trial court rendered judgment in keeping with the verdict of the jury, in favor of appellee and against appellant, Texas General Indemnity Company, in the sum of $12,916, with interest, and with one-fourth set aside for appellee's attorneys.

The material findings of the jury, in substance, are as follows:

(1) That Glynn E. Bledsoe sustained an injury in the course of his employment for Pan American Petroleum Corporation on or about March 28, 1958.

(2) That such injury was a producing cause of his incapacity which arose on

March 28, 1958, and was total and permanent.

(3) That payment to Glynn E. Bledsoe in weekly installments instead of a lump sum will result in manifest hardship or injustice to him.

(4) That none of the incapacity of Glynn E. Bledsoe is solely the result of an injury, ailment or disease existing prior to March 28, 1958.

 These findings are ordinarily binding upon the parties and are sufficient basis for the judgment rendered by the court if there is sufficient evidence of probative force to support such findings. Appellant has presented fifty-three assignments of error, covering some twenty pages of its brief. In this connection we call appellant's attention to Rule 418, Texas Rules of Civil Procedure, reading in part as follows:

"The brief for appellant should contain * * *

"(b) A statement of the points upon which the appeal is predicated, separately numbered in short form and without argument, and germane to one or more assignments of error when assignments are required. Such points will be sufficient if they direct the attention of the court to the error relied upon and they should ordinarily be so concisely stated that they may appear, separately numbered, on a single page of the brief. Assignments of error need not be copied in the brief, and may be cited by reference only."

Appellant evidently deemed it necessary to "box in" its points by stating them in numerous ways and from many standpoints, for fear this Court might hold that the points did not properly present its contentions. At one time this was the practice, but under the present court rules and the liberal interpretation given points by the Courts under the provisions of Rule 422, T.R.C.P., this practice is no longer a proper 

one. To discuss each point presented would unduly extend this opinion. We will endeavor to pick out the real contentions presented by appellant and confine our opinion to such contentions.

Appellant has divided its brief into nine sections and we will discuss each section separately.

 Section I presents three contentions. First, that there is no evidence to support the jury finding that appellee sustained an injury to his back on or about March 28, 1958, while working in the course of his employment with Pan American Petroleum Corporation; second, that the finding of the jury that appellee sustained such injury is contrary to the great weight and preponderance of the evidence; and, third, that the finding of the jury that appellee sustained such injury in the course of his employment is contrary to the great weight and preponderance of the evidence. As to the first contention, appellee testified that on or about March 28, 1958, in the course of his employment, and while working with four or five other men in the construction of a cattle guard for Pan American, he picked up a sill to throw it in the hole for the cattle guard and threw a "kink" in his back. That he suffered great pain, and it felt like a bone was out of place, but that he did not make any outcry at the time or mention it to the other workmen, because he had recently transferred from the Old Ocean Field to the Willamar Field and was not acquainted with his foreman and the men with whom he was working, and was afraid that if he complained of the injury he might lose his job. The next day he did tell one of the workmen, Eugene Peoples, that he had injured his back the day before. He managed to work from 2:00 p. m. on March 28, 1958, until quitting time, and he was able to work the next day, by "being carried" by one of the workmen. However, by the following Monday, his back was hurting him so badly that he had to go to his foreman, one Red Calvert, and report that he was unable to

do the work of a roustabout, whereupon he was taken to his supervisors and placed upon light work, and later he was discharged from his job. This evidence, in itself, is evidence of probative force from which the jury might find that he did sustain an injury to his back on or about March 28, 1958. Texas Van Lines, Inc. v. Godfrey, Tex.Civ.App., 313 S.W.2d 922.

Appellant's next two complaints present the contention that the findings of the jury, to the effect, that appellee did sustain an injury is contrary to the weight and preponderance of the evidence, and that the finding that he received such injury in the scope of his employment is also contrary to the weight and preponderance of the evidence. Of course, the weight and preponderance of the evidence is a matter that was addressed to the discretion of the jury in this case, and not to this Court. These points, as stated, present nothing for review here. But we assume that appellant intended to present the contention that the finding of the jury as to the injury and as to the scope of employment was so against the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust, and this would present points which we do have jurisdiction to consider. To pass upon this matter we must consider all of the evidence. King v. King, 150 Tex. 662, 244 S.W.2d 660; 30 Tex.L.Rev. 803.

It is shown that appellee had worked for the same people or organization for some twelve or thirteen years, however, such organization had changed its name several times, and is now known as Pan American Petroleum Corporation. Appellee had worked for the same employer at the Old Ocean Field, and a short time before the date of his injury he was transferred to the Willamar Field, located in Willacy County, several hundred miles from the Ocean Field. He was doing manual labor at the Old Ocean Field, under the classification of roustabout-pumper, and went to work at the Willamar Field under the designation of roustabout. He had been assigned to work with other men in building a cattle guard, and had worked only about a day and a half when he received his back injury. Appellant contends appellee is not to be believed in his statement about his injury because he has given three different versions of how it occurred. We see no particular difference in these three statements, which are as follows: "I picked up a sill to build a cattle guard to throw it in the hole and threw a kink in my back." "Installed cattle guard in Willamar Field, strained back while lifting a sill for same." "At this particular time it was my understanding that Glynn Bledsoe (appellee) had claimed that lifting a sill as a part of this cattle guard, he had hurt his back." Appellant contends that in the first statement appellee claimed that he wrenched his back by throwing the sill in the hole. But that is not what he said; he said, in effect, that he hurt his back while picking up the sill for the purpose of throwing it in the hole. The second statement is to the effect that he injured his back while lifting a sill. And the third statement says that he injured his back while leaning over and picking up the sill. We conclude that there is no real discrepancy in these statements.

It is true that appellee did not cry out or say anything to the men working with him about having hurt his back. He did tell one of the men the following day that he had hurt his back. Though the injury occurred at 2:00 p. m., he continued to work until quitting time without the foreman finding it out. He did work the following day, but he contended that he did so only by reason of the fact that one of the men was "carrying him." He did not file an official claim report until April 22, 1958. Before he filed any complaint, he went to Houston and consulted and was examined by Dr. Brodsky, a doctor of his own choice, though he undoubtedly knew that he could go to a company doctor. He explained his conduct by saying that he was afraid he might lose his job if he complained of the injury. Shortly thereafter he was discharged for being unable

to perform the duties of a roustabout. Other men were laid off at the same time.

The evidence shows that appellee received an injury to his hips when a boy, fourteen years of age, while playing basket ball. That he had injured his back on two or three other occasions, but was laid up for not more than four days at any one time. These were not compensable injuries. He was examined by Dr. Barnes, the company's physician, who learned from X-rays that appellee had arthritis in his back, and that such condition had existed for quite some time. However, he had a very good record for steady work at manual labor for the twelve or thirteen years that he had been with the same people. There was no attempt to deny the fact that he had degenerative arthritis in his back, and this suit was brought for aggravation of this condition, caused by the injury to his back on March 28, 1958. We are unable to say that the findings of the jury were so against the great weight and overwhelming preponderance of the evidence as to show that they were clearly wrong, unjust, and the result of the prejudice of the jury.

■ Section II of Appellant's brief presents the contention that there is no evidence to support the finding of the jury to Special Issues Nos. 14, 15 and 16, and that there is no evidence which would enable the jury to determine how much of the incapacity existing after March 28, 1958, was attributable to the alleged back injury of March 28, 1958, and how much was attributable to the prior existing condition of appellee. The jury found in answer to Special Issue No. 14, that none of appellee's incapacity produced by the injury of March 28, 1958, "is solely the result of an injury, ailment, or disease existing prior to March 28, 1958." There was some evidence of probative force supporting this finding. Such evidence was pointed out above in our discussion of Section I.

■ The jury having answered Special Issue No. 14 in the affirmative, Special Issues Nos. 15 and 16 became immaterial and it makes no difference whether or not there was any evidence to support the negative answers of the jury to these issues. The transcript shows that Issue No. 15 was not answered by the jury, but as both sides assume it was answered in the negative, we presume a typographical error was made in the transcript. It is the law in this State that an employee is entitled to recover full compensation for an injury, even though his incapacity may be contributed to by a prior non-compensable general injury, if the prior injury was not the sole cause of his incapacity. Miears v. Industrial Acc. Board, 149 Tex. 270, 232 S.W.2d 671; Texas Employers Ins. Ass'n v. Parr, Tex.Com.App., 30 S.W.2d 305; Texas Employers Ins. Ass'n v. Upshaw, Tex.Civ.App., 329 S.W.2d 144; Employers Casualty Co. v. Smith, Tex.Civ.App., 221 S.W.2d 322; Texas Indemnity Ins. Co. v. Arant, Tex.Civ.App., 171 S.W.2d 915; Southern Underwriters v. Grimes, Tex.Civ. App., 146 S.W.2d 1058; Texas Indemnity Ins. Co. v. Godsey, Tex.Civ.App., 143 S.W. 2d 639; Traders & General Ins. Co. v. Wyrick, Tex.Civ.App., 118 S.W.2d 923; Texas Indemnity Co. v. McNew, Tex.Civ. App., 90 S.W.2d 1115; Casualty Reciprocal Exchange v. Dawson, Tex.Civ.App., 81 S.W.2d 284; Williams v. Pacific Employers Ins. Co., 5 Cir., 194 F.2d 490.

Appellant next contends that the jury's answers to Special Issues 15 and 16, to the effect that the injuries suffered by appellee to his back and hips prior to March 28, 1958, which resulted in an abnormal hip condition, did not contribute to his incapacity, was against the overwhelming preponderance of the evidence. The jury having answered Special Issue No. 14 as they did, the answers to Issues 15 and 16 became immaterial, and it makes no difference whether the jury's answers thereto were supported by evidence or not.

■ Appellant next contends that the evidence is wholly insufficient to support a finding by the jury that appellee sustained

total and permanent disability in the course of his employment with Pan American. The record shows that appellee was in a deplorable condition after March 28, 1958. As was stated by Fred B. Wagner, Esq., leading counsel conducting the trial for appellant, "I sympathize with this man. Good Lord, I wouldn't have the physical condition that he is in for all the money in the world." It is true that appellee attempted to follow the carpenter's trade for a few months after he was discharged by the company, but he did not make a success of it and gave it up as he says, simply because he could not work. This effort to work after his injury does not preclude a finding of total incapacity. Associated Indemnity Corp. v. Potts, 5 Cir., 164 F.2d 1002; Traders & General Ins. Co., v. Vaughn, Tex.Civ.App., 317 S.W.2d 800; Consolidated Casualty Ins. Co. v. Baker, Tex.Civ.App., 297 S.W.2d 706; Smith v. Consolidated Casualty Ins. Co., Tex.Civ. App., 290 S.W.2d 589; Gulf Casualty Co. v. Jones, Tex.Civ.App., 290 S.W.2d 334; Trinity Universal Ins. Co. v. Rose, Tex. Civ.App., 217 S.W.2d 425; Traders & General Ins. Co. v. Heath, Tex.Civ.App., 197 S.W.2d 130; Federal Underwriters Exchange v. Tubbe, Tex.Civ.App., 193 S. W.2d 563; Southern Underwriters v. Grimes, Tex.Civ.App., 146 S.W.2d 1058. We feel that the finding of the jury that appellee was totally and permanently incapacitated was supported by the evidence. The evidence is also sufficient to support the jury's answer to Special Issue No. 3, to the effect that the injury which appellee sustained on March 28, 1958, was a producing cause of his incapacity to work. His splendid work record prior to March 28, 1958, and his inability to work after that time support this finding.

By Section VI of its brief appellant contends that the judgment must be reversed because of the conduct of appellee's attorney while questioning the prospective jurors on voir dire, and because of his improper argument to the jury.

While examining the prospective jurors on voir dire, appellee introduced Mr. Charles Cartwright as General Counsel for Pan American, and stated he was appearing in a dual capacity, as General Attorney for Pan American and as attorney for the defendant, Texas General Indemnity Company. Mr. Cartwright objected, and stated to the court and jury panel that he only represented Texas General Indemnity Company. Thereafter, while interrogating a prospective juror named Smith, an employee of Pan American, counsel for appellee asked Smith whether or not he could be fair and impartial even though he worked for Pan American, who owned substantially all of the stock of the defendant. Appellant's objection was made and the question withdrawn, with the statement by counsel for appellee that he did not know it to be a fact that such stock was so owned. Thereafter, in the absence of the jury, Mr. Cartwright made the following statements in answer to questions of appellee's counsel:

"Mr. Abraham: Let me ask you some questions along that line. Aren't you a regular salaried employee of Pan American?

"Mr. Cartwright: I don't think that is material; has nothing whatsoever to do with it. It is immaterial as to whom I represent.

"Mr. Abraham: Isn't it material that your company owns a large percentage of stock?

"Mr. Cartwright: I refuse to answer any such silly questions."

During the trial, counsel for appellee insinuated on several occasions that the suit was really being defended by Pan American rather than by appellant. He undertook to justify his conduct because some ten employees and officials of Pan American were called to testify, several traveling as far as 500 miles in order to be present, and because Mr. Cartwright had stated,

"It is immaterial as to whom I represent." Mr. Cartwright has attached an affidavit to appellant's reply brief to the effect that he is not the general counsel or general attorney for Pan American, and further that Pan American does not and never has owned a single share of stock in appellant company, but this is no part of the record and cannot be considered by us. This conduct on the part of appellee's counsel did not constitute reversible error. Texas General Indemnity Co. v. Bridwell, Tex.Civ.App., 304 S.W.2d 131; Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596.

Appellant presents twelve different statements and arguments made by counsel for appellee to the jury and contends that each was improper, prejudicial and constituted reversible error, and further contends that if each did not constitute reversible error when considered separately, then the cumulative and aggregate effect of the numerous, continuous and frequently repeated improper, prejudicial and inflammatory remarks and arguments to the jury by appellee's counsel were incurable by any instructions the trial court have given and probably caused injury to appellant and the rendition of an improper judgment against appellant.

The arguments and statements appellant complains of are contained in its points Nos. Thirty-One to Forty-One, inclusive, and read as follows:

"(31) * * * that the Workmen's Compensation Statute was not written for employers (meaning such as Pan American Petroleum Corporation), nor for insurance companies (meaning such as Texas General Indemnity Company), but that it was written for working people (meaning such as Appellee), * * *.

"(32) * * * that Appellant was in the business of insuring people, had been paid a premium to do so, and yet had not paid Appellee one red cent, and in inquiring of the jury in such connection: 'Why have a law? Why have insurance companies?' * * *.

"(33) * * * that preponderance of the evidence does not mean who calls the most witnesses,

" 'because, if that were so, no one working for Pan American Petroleum Corporation could ever survive the onslaught of the witnesses at their discretion,' * * *.

"(34) * * * 'You can't please Texas General Indemnity Company, it's derned if you do and derned if you don't,' * * *.

"(35) * * * 'He (referring to Appellee) said, 'If I get fired, if I get laid off, I am going to make a claim.' And they said, 'Do at it. Get at it.' 'Do anything you're big enough to do. We're loaded'—in essence—'We've got all these lawyers. We're ready for you. We've got our adjusters. We'll fight you to the "Lick Log",' * * *

"(36) * * * 'I'd rather represent Glynn (referring to Appellee) in a case like this than all the insurance companies and petroleum-casualty companies that there are.' * * *

"(37) * * * 'The Pan American Petroleum Corporation is kind of like an ostrich that hides its head: They weren't looking too carefully. They were trying to turn, you know, 'Hear no evil' sort of a deal, * * * If we had to pick out three of the moguls, the 'Hear no evil, see no evil, say no evil', you could sure pick out the leading moguls that, I guess, have been here all week,' * * *

"(38) * * * 'I would like to say this deposition business is an old insurance way of handling things,' * * 'I would like to say that the technique of taking a man's deposition, of going up to his office and there these two lawyers are up there and, just imagine

this, saying 'Now, when did you go to a doctor? When was that?'

"(39) * * * 'In my short ten years of practice, never have I seen such a tremendous opposition, such an overwhelming—He (referring to Appellant's counsel Fred Wagner) says they have gone to a lot of trouble to unearth the facts. Ladies and gentlemen, they have really gone to the ultimate means of imaginable ability of anybody to try to turn over any leaf, and I don't understand why. * * * That insurance company, that great mysterious insurance company in this case that we have never seen, that we don't know where they are, it's the most—they don't have a representative in here. There's never anything that they have ever done in it,'

" 'Now, all we have heard about is Pan American Petroleum Company, and I have yet to see or talk or hear anywhere in the trial of this case of this Texas General Indemnity Company, and I want to tell you what I think,' * * *

" 'I am staying in the record * * * When I say that in my opinion, of all the law firms—Mr. Robinson's, Mr. Wagner's, Mr. Cartwright's, that you, sir, are the power behind the throne. You, sir, are the "whip" in the streets; you, sir, are getting the witnesses in, * * * have been the man that is trying more than anybody else to defeat this case. Now, why, I don't know. But, there, in my opinion, sits the representative, by his own admission, of the Texas General Indemnity Company. And, why, I don't know. They are supposed to be insurance companies. They are supposed to be paying people that are hurt. But, you have seen a great defense with little —with very little to do on.'

"(40) * * * that Appellee did not produce his doctor in Houston, Dr. Brodsky, who had been treating him for his ailments, because Appellee could not afford to pay him to appear and testify, and by inference stating that Appellant could afford to bring a specialist from Corpus Christi to testify, thus contrasting the respective positions; wealth and power of the parties, * * *.

"(41) The trial court erred in permitting Appellee's counsel to show during the introduction of evidence that a doctor Hester in Sweeny, Texas, who did examinations for Pan American Petroleum Corporation of its employees, had examined Appellee in 1956, and again on March 11, 1958, the trial court simply permitting the showing of these examinations but not the introduction of the reports, and then in permitting Appellee's counsel in his argument to the jury to argue that Dr. Hester would have testified that Appellee was in good condition or otherwise Appellant would have produced Dr. Hester as a witness, and the record showing that Dr. Hester was as available to Appellee as he was to Appellant and Appellee having testified that Dr. Hester was also Appellee's family physician, and said prejudicial argument having been made by Appellee's counsel in his closing argument when Appellant had no opportunity to reply to same and point out to the jury the erroneous inference Appellee's counsel was asking them to draw, and the trial court erred in overruling Paragraph 14 of Appellant's Motion for New Trial directing attention to said error."

The arguments of the attorneys for appellant and appellee are set out in full in the statements of facts, beginning on page 635 and ending on page 724. We might here state that when these arguments, together with the interruptions, statements and objections of the attorneys on both sides are read as they occurred a

very different picture is presented from that which appears by reading appellant's brief. Not that appellant has stated anything that is untrue or unsupported by the record, but the brief presents quite a different general picture from that obtained by reading the record. It is difficult to tell from appellant's brief whether these statements were made in the opening or closing argument, and whether they were objected to, and such objections sustained or overruled by the court, or whether no objection at all was made. We have checked the arguments as they appear in the statement of facts, and it seems that objections were made, and sustained by the court to most of them, or no objections at all were made. We think that all arguments that were objected to and the objections sustained, are not of such harmful nature as to have probably caused the jury to render the wrong verdict. We are further of the opinion that where objections were made and overruled, such arguments were not of such harmful nature as to call for the reversal of the case under the provisions of Rule 434, T.R.C.P., and the holdings of the Supreme Court in Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596. The question of a lump sum payment was a contested issue here, and under such circumstances appellee's counsel is allowed a wider latitude in making his argument. Texas Employers Ins. Ass'n v. Hatton, 152 Tex. 199, 255 S.W.2d 848; Texas Employers Ins. Ass'n v. Hadley, Tex.Civ.App., 289 S.W.2d 809; Texas Employers Ins. Ass'n v. Logsdon, Tex.Civ.App., 278 S.W.2d 893; Insurance Co. of Texas v. Davis, Tex.Civ. App., 276 S.W.2d 327; Texas Employers Ins. Ass'n v. Rigsby, Tex.Civ.App., 273 S. W.2d 681; Houston Fire & Cas. Ins. Co. v. Ford, Tex.Civ.App., 241 S.W.2d 158; Employers Liability Assurance Corp. v. Sims, Tex.Civ.App., 67 S.W.2d 445.

The most serious questions of improper argument are presented by appellant's Points Nos. 40 and 41. In the argument presented in Point No. 40, appellee's counsel in replying to appellant's inquiry as to why appellee had not brought Dr. Brodsky from Houston to testify, asked the jury if they knew what these doctors charge to testify. An objection was made as to counsel's stating what doctors charge, and no further statement was made, other than that the reason appellee did not bring Dr. Brodsky from Houston was that he couldn't afford the expense. No objection was made to this statement. The statement or argument complained of in Point No. 41, was appellant's failure to bring Dr. Hester from Sweeney, Texas, a company doctor who had examined appellee just seventeen days before he received his injury, to testify. Dr. Hester was also appellee's family doctor. In this connection, appellee's counsel said to the jury: "Don't you know if they could have just gotten a little bit of sucker to say that he was in bad shape before, they would have brought that doctor down here and had him to tell it to you from this stand." Although appellee's counsel was interrupted many, many times during his argument, the above statement was not objected to by appellant's counsel. We feel that inasmuch as these statements were made in reply to questions asked by appellant's counsel, and were not objected to, except the question as to what doctors charge, that no reversible error was presented.

We are of the opinion that under all the facts and circumstances, and after a consideration of the entire record herein, that all of the remarks and arguments, taken either separately or collectively, were not of such prejudicial or inflammatory nature as to cause the jury to render an improper verdict. Since the Supreme Court's decision in Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596, the rule is well settled that before a judgment will be reversed because of arguments of counsel, the argument must be improper and it must be such as to satisfy the reviewing court that it was reasonably cal-

culated to cause, and probably did cause, rendition of an improper judgment in the case.

In Texas General Indemnity Co. v. Bridwell, Tex.Civ.App., 304 S.W.2d 131, 133, the rule requiring a party to object to improper argument at the time it is made or otherwise waive any complaint thereafter, is well expressed as follows:

"If the argument is of a nature or is made under such circumstances that if objection is made at the time, so that counsel can offer an explanation or make corrections which will make argument proper or harmless, or if the argument is of a nature that its withdrawal by counsel or instruction by the trial court to the jury to disregard the argument will cure the error and render effect of argument harmless, complaining party must object to the argument and request the trial court to instruct the jury not to consider it, and failure to so object waives the error. Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054."

Appellant's counsel who prepared its brief in this case, but who did not participate in the trial, asserts that appellee's counsel began a course of prejudicial and inflammatory conduct and continued same throughout the trial, and such conduct reached extreme and unusual viciousness in the argument of appellee's counsel to the jury. This statement is quite different from the one made by Fred B. Wagner, Esq., leading counsel for appellant in the trial, who made the following comment concerning the argument of appellee's counsel:

"It is his (the Court's) duty, as he has vindicated me when I called him (Mr. Abraham) an able lawyer throughout this trial. I think I was justified in calling him such. His ar-

gument a while ago was, I think, without peer. I don't know of any one who could have made a better presentation of his case. That is his duty, to argue the evidence to you; if he can, point out to you just as I am going to try to point out to you, special features, to help you, if you please, not to try to confuse you, not to make a speech to you."

We have read both the opening and closing arguments of appellee's counsel, which appear in full in the statement of facts, and we cannot agree with the statement made by appellant's counsel who wrote the brief in this case, that such arguments were extreme and unusually vicious. The arguments of appellee's counsel were interrupted on many occasions by objections of counsel for appellant, which were generally sustained by the trial court, and presumedly the trial court would have instructed the jury not to consider such remarks and arguments if it had been requested to do so by appellant. No such requests were made, so far as this record shows. To discuss each remark and argument objected to would unduly extend this opinion. Some of the authorities supporting our holding here are as follows: Texas Employers Ins. Ass'n v. Collins, Tex. Civ.App., 321 S.W.2d 119; Transport Ins. Co. v. Burditt, Tex.Civ.App., 294 S.W.2d 248; Texas Employers Ins. Ass'n v. Sevier, Tex.Civ.App., 279 S.W.2d 473; Texas Employers Ins. Ass'n v. Logsdon, Tex.Civ. App., 278 S.W.2d 893; Insurance Co. of Texas v. Davis, Tex.Civ.App., 276 S.W.2d 327; Texas Employers Ins. Ass'n v. Rigsby, Tex.Civ.App., 273 S.W.2d 681; Texas Employers Ins. Ass'n v. Hale, Tex.Civ. App., 242 S.W.2d 796.

The contentions presented by appellant in Sections VII, VIII and IX of its brief are without merit and are overruled.

The judgment is affirmed.