## ERWIN et al. v. WELBORN et al.
### No. 5815.

Court of Civil Appeals of Texas. Amarillo.
Oct. 27, 1947.

Rehearing Denied Dec. 8, 1947.

H. H. Cooper and Morgan, Culton, Morgan & Britain, all of Amarillo, for appellants.

Allen, Locke & Kouri, of Wichita Falls, for appellees.

LUMPKIN, Justice.

This case grew out of an automobile collision at a road intersection on Highway No. 287 in Potter County, Texas, about eight miles east of Amarillo. As a result of injuries received in this collision, Roy Welborn died; and his four children, Dolores Welborn, age 14, Leroy Welborn, 10, Don Allen Welborn, 8, and Jimmie Welborn, 6, suffered personal injuries. George Simms as next friend for Rosa Welborn, a widow, and for the four children, death bene-

ficiaries of Roy Welborn, appellees, brought this action against C. B. Erwin and Harold Lee Erwin, father and son, appellants. Rosa Welborn, widow of Roy Welborn and mother of the four children, was not involved in the collision. At the time of the accident she was a patient at the Wichita Falls State Hospital.

On June 18, 1946, about 9 a.m., so the evidence reveals, the Welborn car, driven by Roy Welborn's brother, Paul, was proceeding east on Highway No. 287. The Erwin wheat truck, operated by Harold Lee Erwin, a boy about 17 years old, was proceeding south on a crossroad. The Welborn children and their father were in the Welborn car. These children had been living at the Presbyterian Home For Children at Amarillo since 1942, soon after their mother had become a patient at the hospital. On the night preceding the accident the Welborn brothers had driven from Wichita Falls to Amarillo to get the children and to return with them to Wichita Falls for a vacation during which they were to have the opportunity of visiting their mother at the hospital.

The appellees alleged that the appellant Harold Lee Erwin, an employee of appellant C. B. Erwin, at the time of the accident was grossly negligent in operating his father's truck in that he was driving in excess of the lawful rate of speed; that he did not have the truck under proper control at the time and immediately prior to the collision; that he was not keeping a proper lookout; and that he failed to bring the truck to a complete stop at a stop sign in violation of the laws of the State of Texas. Further, the appellees pleaded that C. B. Erwin was negligent in not providing a suitable, competent, and prudent person to drive his truck upon a public highway. The appellees pleaded that any one or all of the alleged acts of negligence were the direct and proximate cause of the collision.

The appellants filed a general denial and pleaded contributory negligence on the part of Paul Welborn, the operator of the Welborn car. The appellants alleged that neither Paul Welborn nor Roy Welborn was keeping a proper lookout; that both were tired and exhausted from their drive of the night before; that they were under the influence of intoxicating liquor; and that these acts on the part of the Welborn brothers constituted negligence and were the sole proximate cause of the injuries sustained by the appellees.

Trial was to a jury. To the special issues submitted, the jury determined, among others, the following facts: that Harold Lee Erwin did not fail to stop at the road intersection stop sign; that he did fail, however, to keep such a lookout for vehicles approaching the road crossing from the west as would have been kept by a person of ordinary prudence under similar circumstances; and that such failure was the proximate cause of the injuries sustained by Roy Welborn and his children.

The jury found no acts of negligence on the part of the Welborn brothers. In answer to appellants' special requested issues, the jury found that the Welborn brothers at the time of the collision were not under the influence of intoxicating liquor.

In answering the special issues as to the amount of money which would compensate each of the Welborn children for the personal injuries sustained in the collision, the jury found as follows:

| | |
|---|---|
| Dolores | $ 4,320.00 |
| Leroy | $ 7,200.00 |
| Don Allen | $ 9,360.00 |
| Jimmie | $10,800.00 |

As to the amounts of money which would reasonably compensate Rosa Welborn and each of her children for the pecuniary loss sustained by them by reason of Roy Welborn's death, the jury found:

| | |
|---|---|
| Rosa Welborn, the mother | $2,400.00 |
| Dolores | $1,080.00 |
| Leroy | $1,800.00 |
| Don Allen | $2,340.00 |
| Jimmie | $2,700.00 |

In accordance with the jury's verdict the trial court rendered judgment against the appellants and in favor of the appellees. It found that Harold Lee Erwin was an employee of the appellant C. B. Erwin

and that at the time of the accident Harold Lee Erwin was acting within the scope of his employment. The court awarded the appellees $42,000 to be divided in accordance with the jury's findings. To this judgment the appellants duly excepted and have perfected their appeal to this court. Following the rendering of judgment, the appellees filed a remittitur of $3,300 for Leroy Welborn and $5,200 for Don Allen Welborn.

 In nine points of error the appellants challenge the court's judgment, first contending the court erred in sustaining appellees' motion to strike appellants' first amended motion for a new trial. The record reveals that the judgment was rendered in this case on March 10, 1947; that the appellants filed their motion for a new trial on March 17, 1947; and that their first amended original motion for a new trial was filed on April 8, 1947. Rule 330(k), Texas Rules of Civil Procedure, requires that an amended motion for a new trial be filed within 20 days of the original motion. This rule is mandatory. Since appellants' amended motion was filed more than 20 days after the original motion, the amended motion is ineffective or any purpose. Traders & General Ins. Co. v. Scott et al., Tex.Civ.App., 189 S.W.2d 633, writ refused w. m.; Millers Mut. Fire Ins. Co. of Texas v. Wilkirson et al., 124 Tex. 312, 77 S.W.2d 1035; Dallas Storage & Warehouse Co. et al. v. Taylor, District Judge, et al., 124 Tex. 315, 77 S.W.2d 1031; Tunstill et al. v. Scott, Tex.Civ.App., 182 S.W.2d 734, writ refused w. m.

 The appellants' second point of error concerns the court's ruling as to the admission of two whiskey bottles in evidence. Soon after this collision occurred, Highway Patrolman Jack Miller arrived on the scene and, while making an investigation of the causes of the accident, removed a partially filled pint bottle of whiskey from the person of Paul Welborn. In his search of the Welborn car, he found an unopened pint bottle of whiskey in the rear seat. Miller testified he detected an odor of whiskey on Roy Welborn's breath. There was other evidence as to the odor of whiskey, although there seemed to be some difference of opinion as to whether the odor was carried on Roy Welborn's breath or Paul Welborn's breath or whether it was emanating from their whiskey-saturated clothing. In any event Miller had possession of the two bottles of whiskey. Upon the request of appellants' counsel for Miller to produce the two bottles, appellees' counsel objected on the grounds that to bring these bottles of whiskey into court was inflammatory and prejudicial to the rights of the appellees. The trial court sustained the objection. The appellants here contend the court erred when it refused to permit the appellants to produce the bottles in open court or to introduce them in evidence. With this we do not agree. Without objection the appellants had introduced before the jury evidence to present properly this portion of their defense and theory of the case. A witness for the appellants, the operator of an Amarillo liquor store, testified that early on the morning of the day of the accident he had sold two pints of whiskey to a man who said he had come to Amarillo to take his children to Wichita Falls for their vacation. Without contradiction it was shown that the whiskey was taken from the Welborn car and that a partially filled bottle was taken from Paul Welborn's pocket. Rule 434, Texas Rules of Civil Procedure, provides that no judgment shall be reversed on appeal and a new trial ordered unless it can be shown that the error complained of amounted to such a denial of appellants' rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, or probably prevented the appellants from making the proper presentation of the case to the appellate court. The mere refusal to permit the whiskey itself to be exhibited to the jury, when considered in connection with the other evidence, did not prevent the appellants from making a proper presentation of their case. The trial court's ruling was not reasonably calculated to cause an improper judgment. Leyendecker et al. v. Harlow, Tex.Civ.App., 189 S.W.2d 706, writ refused w. m.

 The appellants' third, fourth, and fifth points of error are concerned with the manner in which the jury answered various special issues. In response to Special Is-

sue No. 1 the jury found (a) that appellant Harold Lee Erwin did not fail to stop at the stop sign, (b) that his stopping at the stop sign was negligence, and (c) that such negligence was the proximate cause of the injuries received by Roy Welborn and his children. Since there is a conflict in the jury's answers to the various subdivisions of this special issue, the appellants contend that the court erred in rendering judgment for the appellees. It is well settled that where a jury answers one issue, or subdivision of an issue, and later answers other issues or subdivisions of issues, the answers to which are not called for by reason of the particular answers made to the preceding issue, or its subdivision, the answers to the subsequent issues become immaterial. The jury's answers to subdivisions (b) and (c) are immaterial; therefore, the appellants' points of error in this connection are overruled. Bryan & Emery, Inc. v. Frick-Reid Supply Co., Tex.Civ.App., 10 S.W.2d 1023.

Further, appellants argue that the court erred in rendering judgment based solely on the findings under Special Issue No. 2. This special issue read as follows:

"(a) Do you find from the preponderance of the evidence that Harold Lee Erwin, as he approached Highway No. 287, on the occasion in question, failed to keep such a lookout for vehicles approaching the crossing in question from the west as would have been kept by a person of ordinary prudence under the same or similar circumstances?

"Answer: Yes or No.

"(b) If so, then do you find from the preponderance of the evidence that such failure, if any, to keep such lookout, was a proximate cause of the injuries to Roy Welborn and his children?

"Answer: Yes or No."

The jury's answer to each subdivision was "Yes."

The court did not submit as a separate subdivision the question of whether the appellant's failure to keep a lookout was negligence. The appellants contend that the court erred in not submitting this question in a separate subdivision. A study of subdivision (a) convinces us the question was asked, and for the following reasons the

appellants' contention is overruled. In negligence cases such as this our Supreme Court has held that the ultimate issue is made up of four elements: (1) that the appellants did an act; (2) that the act was one of negligence; (3) that the act of negligence was the proximate cause of the appellees' damage; and (4) that the appellees did suffer damages. In three of these elements, the jury found against the appellants. As we have seen, the second element—i. e., the act was one of negligence—was not submitted as a separate subdivision, and the record fails to show that this omission on the part of the trial court brought either an objection or a request from either party. Under Rule 279, Texas Rules of Civil Procedure, if an issue is submitted inquiring as to whether an act was done and some of the elements of negligence were not submitted, the trial court is presumed to have found the unsubmitted element or elements, as the case may be, in such a way as to support the judgment rendered, providing the evidence is sufficient to support such findings. Wichita Falls & Oklahoma R. Co. et al. v. Pepper, 134 Tex. 360, 135 S.W.2d 79.

Thus under the Pepper case, supra, where not objected to, there would be no error in submitting these two issues: (1) did Harold Lee Erwin fail to keep a proper lookout? and (2) was such failure to keep a proper lookout the proximate cause of the injuries? The court in support of its judgment would be presumed to have found that the failure to keep a lookout was negligence. However, in Special Issue No. 2, Subdivision (a), it will be noticed the court not only asked whether Harold Lee Erwin kept a lookout but also asked whether he failed "to keep such a lookout for vehicles approaching from the west as would have been kept by a person of ordinary prudence under the same or similar circumstances." The court defined negligence as doing that which a person of ordinary prudence would not do or a failure to do that which a person of ordinary prudence would do under the same or similar circumstances. In our opinion, in answering Special Issue No. 2, Subdivision (a), in the affirmative, the jury found that the appellant Harold Lee Erwin failed to keep a

proper lookout and his failure to keep such a lookout constituted an act of negligence.

The appellants' sixth point of error is based on the jury's finding in response to Special Issue No. 4, Subdivision (a), the affirmative submission of appellants' defense as contained in their pleadings which alleged that the injuries suffered by Roy Welborn and his children were the results of the negligence growing out of the manner in which Paul Welborn operated the automobile. The jury found that Paul Welborn was not operating the automobile at a greater rate of speed than a person of ordinary prudence would have done under similar circumstances. This answer, the appellants argue, is contrary to the evidence. Paul Welborn stated, the evidence reveals, that immediately prior to the accident he was driving between 30 and 40 miles per hour. Dolores Welborn testified the car was going about 30 to 35 miles an hour, while her brother Leroy said he could not tell exactly how fast the car was traveling but the objects he passed were not going by too fast. In passing on the sufficiency of evidence to sustain a finding, we must review the evidence in the light most favorable to the finding. Since, in our opinion, the jury's finding in this connection is supported by evidence of probative force, appellants' sixth point of error is overruled. Stovall v. Whatley, Tex.Civ.App., 183 S.W. 2d 672; Thompson v. Clement et ux., Tex. Civ.App., 202 S.W.2d 341, writ refused n. r. e.

By their seventh and eighth points of error, the appellants complain of portions of the arguments made by the appellees' counsels. One of the statements made was to the effect that the appellants were dollar conscious and wheat conscious and had no regard for human lives and were more interested in gathering their wheat than in protecting the lives of the appellees. No objection was made to this line of argument, nor did the court repress such argument upon its own motion. The appellants complain of a portion of the appellees' closing argument in which counsel stated in effect that the appellants had made a large wheat crop and were not concerned with human lives as demonstrated by the fact that neither appellant offered aid to the injured appellees at the scene of the collision; that the appellants were more interested in saving their wheat crop than in protecting innocent children; and that although the appellees were suing for $59,-500, in consideration of the evidence the jury would not be satisfied with a verdict less than something near $50,000. To one of these bills of exception the court wrote the following qualification: "Considerable evidence was introduced, without objection, as to the condition of the persons who were injured * * * and it was likewise shown, without objection, that no aid was given to the injured persons * * * and while I would not consider the argument * * * as being particularly inflammatory, I felt that the jury might be misled by it and consider the failure of the defendants to render aid as an element of damages. I therefore instructed the jury not to consider it * * *." In qualifying another bill of exception the court stated that the amounts sued for were contained in the pleadings read to the jury, that the appellants did not complain of the argument or call it to the court's attention prior to the entry of judgment.

Great latitude is allowed counsel in discussing the facts and issues of the case, but this latitude extends only to such facts and issues as raised by the evidence. This collision occurred during the wheat harvest season. The appellants introduced evidence showing that the appellant C. B. Erwin had several combines and wheat trucks engaged in the harvest. Harold Lee Erwin was engaged in trucking wheat from the combines on his father's farms to a grain elevator near the road intersection. Because the appellees' arguments concern factors and issues raised by the evidence, we do not believe these arguments were improper; and even if the arguments were harmful, the appellants have waived their exceptions by their failure to object. Ramirez v. Acker et al., 134 Tex. 647, 138 S.W.2d 1054.

In their last point of error the appellants contend that because of the unconscionable and excessive amounts awarded the appellees, the court erred in not granting a new trial. These awards, the appellants assert, are not supported by the evidence. After

the filing of the remittitur, Leroy received $3,900 and Don Allen $4,160 for personal injuries. The amounts awarded by the jury to the appellees for the pecuniary loss of their husband and father remained the same, a total of $10,320. We do not consider these amounts excessive. At the time of his death, Roy Welborn was 36 years old and in good physical condition. During World War II he had served in the United States Navy. After his discharge from the navy, he had been employed as a mechanic by the Southwestern Trailways where he earned $82 every two weeks. His future was bright. The children were at the Presbyterian Home under an agreement whereby their father paid $15 a month for each of them. With few exceptions, due to illness, he made these payments. Likewise from time to time he would buy clothing for the children and occasionally he would send them extra money. As to the amount awarded the children for their personal injuries, the evidence shows that Jimmie was hurt more seriously than the others. When brought to the hospital, he was in a state of extreme shock and not expected to live. He was suffering from a deep laceration which extended over one eye and the base of the nose. The tear gland of his right eye was lying on his cheek, and within the laceration were many loose spicules of bone. He had suffered a fracture of the first and second cervical vertebrae. Jimmie was in a state of coma for several days and was practically unconscious for over a month. The physician testified that in his opinion the boy throughout his life would have a permanent disability of from 30 to 50 per cent. Jimmie was still under treatment at the time of the trial.

For a week following the collision, the evidence shows that Dolores was unconscious and was forced to remain in bed two weeks after leaving the hospital. Her physician stated she suffered a moderately severe concussion and multiple abrasions. He did not think it probable she would suffer any permanent disability as a result of her injuries, although for a time she was a little sluggish in answering questions. Don Allen received a concussion and multiple abrasions. He remained in the hospital three days, but upon his dismissal he was still somewhat confused. With reference to the injuries received by Leroy, the doctor testified he had slight lacerations on his scalp and complained of some pain in his shoulder area. He suffered a very slight concussion and was confused for several hours. He remained at the hospital two days.

Circumstances alter cases when the amounts in monetary damages are being determined by reason of death caused by the negligence of another. Certainly $2,400, the sum awarded Rosa Welborn for the loss of her husband's services during the remainder of his expected life, cannot under any rule be considered excessive. Considering Roy Welborn's age, his good physical condition, his life expectancy, his earning capacity, and the tender ages of his children, we cannot say the awards made are excessive where the jury's verdict on the special issue is not against the great preponderance of the evidence and there is nothing to show that the jury's verdict was the result of passion, prejudice, or other improper influence.

In considering the awards granted the children for their personal injuries, it must be pointed out we are living in a period in which the cost of living is very high and the purchasing power of the dollar is very low. Measured by another day's cost of living the amounts given the children might seem excessive; measured by today's inflated prices the amounts granted the children are within reasonable bounds. Leyendecker et al. v. Harlow, supra; Younger Bros., Inc. v. Marino et al., Tex.Civ.App., 198 S.W.2d 109, writ refused n. r. e.; Thompson v. Clement, supra; Dallas Railway & Terminal Co. v. Bishop, Tex.Civ.App., 203 S.W.2d 651, writ refused n. r. e.

We have carefully examined the record in this case and, finding no reversible error, the judgment of the trial court is affirmed.