James H. PRIDE, Appellant,

v.

Marie PRIDE, Appellee.

No. 15448.

Court of Civil Appeals of Texas.

Dallas.

Oct. 3, 1958.

Rehearing Denied Nov. 7, 1958.

Geo. K. Holland, Dallas, for appellant.

Raggio & Raggio, Louise B. Raggio, Dallas, for appellee.

DIXON, Chief Justice.

James H. Pride has appealed from a judgment awarding his wife, Marie Pride, a divorce, dividing their property, decreeing a money judgment of $1,500 in favor of the wife, allowing an attorney's fee of $1,500, and enjoining him from harassing, molesting, coming about, or communicating with her. There were no children involved. The case was tried without a jury.

In his first point appellant asserts that grounds for divorce alleged in a previous divorce action brought by the wife, but later dismissed by her, cannot be considered in this suit, since the parties effected a reconciliation and resumed their marital relationship following the institution of the first suit. Appellee's pleadings and evidence are to the effect that the reconciliation was based on appellant's promise to cease his acts of cruel treatment as described in the first divorce petition, but that soon after the reconciliation he resumed said acts. Under such circumstances it is permissible for the court to consider the acts of cruelty which were the basis for the first divorce action. Thompson v. Thompson, Tex.Civ. App., 231 S.W.2d 496. Appellant's first point is overruled.

In his second and fourteenth points appellant says that (2) appellee failed to allege or prove sufficient legal grounds for divorce; and that (14) there was no evidence to support the court's finding that appellant harassed appellee. Appellee's pleadings and her testimony describe twenty separate episodes occurring from the time of the marriage June 5, 1955 to the time of the filing of this divorce suit July 16, 1957. These episodes involve acts of physical violence, threats, humiliations, and indignities. They were sufficient grounds for divorce because of cruel treatment, including harassment. Art. 4629(1), V.A. C.S. Appellant's second and fourteenth points are overruled.

Appellant's third and seventh points allege that (3) appellee failed to allege or prove sufficient legal grounds to show fraud, and that (7) the court's disposition of the community property was not equitable. The judgment does not mention fraud

and the record contains no findings of fact and conclusions of law. However appellee pled fraudulent concealment by appellant of the community assets and in our opinion there is sufficient evidence to support a finding to that effect. But a finding of fraud was not necessary, for regardless of fraud, Art. 4638, V.A.C.S. gives the trial court broad discretion to order a division of the estate of the parties in such a way as the court shall deem just and right. We see nothing inequitable in the division made by the court. Appellant's third and seventh points are overruled.

■ In his fourth point appellant complains that there were not sufficient pleadings and evidence to support a judgment of $1,500 or any other sums against him. Appellee pled that appellant had failed to list more than $4,000 in community funds and she prayed for a money judgment. Appellant himself testified that on April 18, 1957 he put $2,000 of community money in a hole in the floor of his apartment. On July 16, 1957, the date this suit was filed, he put another $1,000 in the hole and put another $1,000 into his pockets. He also admitted that on the date this suit was filed he drew $2,000 cash from the Lakewood State Bank. His testimony, which is vague and evasive, fails to account for this money. We think that under the circumstances presented in this record it was not improper for the court to enter a money judgment of $1,500 against appellant. Markum v. Markum, Tex.Civ.App. 273 S.W. 296. Appellant's fourth point is overruled.

■ Appellant's next point attacks the award of $1,500 to the wife as attorney's fees. An attorney experienced in divorce litigation testified that a fee of $1,500 was reasonable. Moreover appellant himself testified that he had agreed to pay his attorney $3,600 as a fee, part of which he had already paid. Appellant's fifth point is overruled.

In his sixth point appellant alleges that the court had no right or authority to "sign and enter on January 15, 1958, a new judgment judicially changing, altering and amending the original judgment signed and entered October 25, 1957."

The record discloses that on October 25, 1957 the court signed a judgment which awarded an attorney's fee of $1,500, not to appellee Marie Pride, but direct to her attorneys Raggio & Raggio. Appellant's motion for new trial was filed November 25, 1957. The amended motion was overruled January 7, 1958. On January 15, 1958 the court corrected its judgment, so that the award of $1,500 was not made direct to the attorneys, but was to appellee Marie Pride for the benefit of her attorneys. Among the concluding paragraphs of the corrected judgment were the following:

"It is further ordered, adjudged and decreed that this judgment be entered nunc pro tunc as of the date of the entry of the original judgment, which was signed and entered the 25th day of October, 1957 and recorded in Book A. Page 428 of the records of this Court. * * * To all of which defendant in open court excepts and gives notice of appeal, etc. on this 17th day of October, 1957. * * * Signed and entered Nunc Pro Tunc 1–15–58."

■ We shall not pass on the question whether the court correctly ordered that the judgment of January 15, 1958 be entered nunc pro tunc as of October 25, 1957, for that error, if it was error, does not under the circumstances, require a reversal of the judgment. The court retained control of its judgment for thirty days following the overruling of the motion for new trial on January 7, 1958. Dallas Storage & Warehouse Co. v. Taylor, 124 Tex. 315, 77 S.W.2d 1031 (Syl. 8); Sears, Roebuck & Co. v. Blackburn, Tex.Civ.App., 305 S.W.2d 791; Rule 329–b, subd. 6(c) Texas Rules of Civil Procedure. Therefore, looking at the substance rather than the form of the written decree, we hold it was proper on January 15, 1958 or on January 17, 1958, for the court to enter a cor-

rected judgment. Appellant's sixth point is overruled.

The record discloses that testimony in this case began October 14, 1957, and was concluded on October 17, 1957. Appellee's attorneys thereafter prepared a proposed written form of judgment to be entered, and the court set October 25, 1957 as the date of a hearing to decide whether to approve or disapprove the proposed judgment. Appellant's attorney was notified of this setting. On the day named Hon. George K. Holland appeared in the case for the first time as attorney for appellant. He informed the court that he had been employed only the day before the date set for the hearing. He exhibited a letter from the attorney who had represented appellant during the trial, in which letter the attorney announced his withdrawal as appellant's attorney. There is nothing in the record to show that the attorney has ever asked for or been granted leave of the court to withdraw from the case. Kendall v. State, Tex.Civ.App., 51 S.W. 1102; 7 C.J.S. Attorney and Client § 110, p. 944. Apparently he is still one of appellant's attorneys of record. Rule 10, T.R.C.P. Mr. Holland requested additional time to study the proposed judgment. After considerable discussion and argument by the attorneys this request was denied. Mr. Holland subsequently prepared and the court signed a written order refusing the request. At a later date in a hearing with the attorneys present, the court withdrew her signature from the order.

In his eighth and twentieth points appellant complains because the court refused to allow Mr. Holland additional time to study the proposed judgment and because of the withdrawal of the court's signature from the written order refusing Mr. Holland's request.

After a careful study of the record as a whole we have concluded that the procedures here under attack do not present reversible error. While the court might very properly have granted Mr. Holland additional time to study the proposed judgment, there was no abuse of discretion in refusing to do so and we see no harm to appellant in the court's refusal. Mr. Holland, with the record of the trial already made before he was employed, has ably represented appellant. And it is to be noted that the original judgment was subsequently corrected in the light of the motion for new trial. As for the withdrawal of the court's signature from the written order refusing to grant additional time: there is no question that the court did refuse to grant additional time. That is clear from the record regardless of the existence of any written order to that effect. No harm resulted to appellant by the withdrawal of the signature. Appellant's eighth and twentieth points are overruled.

In his ninth point appellant asserts that the court improperly and unreasonably refused to allow appellant's attorney to cross-examine appellee's witness, Morris Pride. From the record we gather that during cross-examination of the witness objection was made that the cross-examination should be limited to subject matter brought out on direct examination. This objection was sustained. The objection was not well taken, and it was error to sustain it. Texas is one of the jurisdictions which does not confine cross-examination to the matters brought out on direct examination. McCormick & Ray, "Texas Law of Evidence" Vol. I, Sec. 600 (Second Edition). Under some circumstances the error would require a reversal of the judgment, but a careful reading of the statement of facts leads us to conclude that in this case the error was harmless. For after the court had sustained the objection considerable argument took place as to the nature of the questions which appellant's attorney wished to ask and their purpose. Then the court permitted the witness to answer a number of questions, apparently to the attorney's satisfaction. At any rate no bills of exception were saved. There is nothing in the record to show what questions the attorney was not permitted to

ask, or what matters he wished to develop that were not brought out on direct examination, or what the testimony of the witness would have been. The record therefore furnishes no basis for us to hold that appellant suffered harm because of the court's initial ruling. Mollinary v. Karam, Tex.Civ.App., 257 S.W.2d 886. Appellant's ninth point is overruled.

Appellant's thirteenth point is as follows: "The several exceptions made by appellant to appellee's First Amended Original Petition should have been sustained by the Court and the matter excepted to should have been eliminated by the Court." The point and appellant's statement and argument in connection with it are multifarious and too general to be considered on appeal. Crawford v. Continental Panhandle Lines, Inc., Tex.Civ.App., 278 S.W.2d 566; Texas Employers' Ins. Ass'n v. Logsdon, Tex.Civ.App., 278 S.W.2d 893; Johnson-Sampson Const. Co. v. W. & W. Waterproofing Co., Tex.Civ.App., 274 S.W.2d 926; Rule 418. However we have examined the record and find that appellant levelled eighteen special exceptions at appellee's petition. Ten of these exceptions were overruled, four of them were sustained, and four of them were not acted on by the court. In our opinion the court's rulings on the exceptions do not in any instance show reversible error. Appellant's thirteenth point is overruled.

In his twenty-first point appellant complains that the court improperly allowed appellee's attorneys to file on the date of the judgment an affidavit for the immediate issuance of an execution. This procedure is permitted under Rule 628, T.R.C.P. Appellant points out that in this case the affidavit was executed before the judgment was corrected and that it was error to attempt execution of a judgment in favor of the attorneys for their fee. We discussed the correction of the judgment in our consideration of appellant's sixth point. In any event, we cannot say that the filing of the affidavit and the issu-

ance of the execution did harm to appellant, for the execution was returned by the constable nulla bona, that is that "no property found in Dallas County, belonging to defendant subject to execution." Appellant's twenty-first point is overruled.

Appellant's twenty-third point is that the court committed error in designating one Jim Martin as agent for appellee with authority to receive in her behalf the property which the court set aside for appellee in the judgment. We see no merit in this complaint. If anyone might have a just basis for complaint it seems to us that it would be appellee, not appellant. Appellee has not complained. The twenty-third point is overruled.

Appellant's brief contains other points of alleged error. For example it is asserted that the court in a number of instances by acts and rulings exhibited a hostile attitude toward appellant, considered hearsay testimony and permitted improper procedures in the manner of presenting testimony. We have carefully considered all of these other points, and find no reversible error presented in any of them. In many instances at the trial no objection was made to the evidence or the manner in which it was presented. There is nothing to indicate that the court considered hearsay evidence. The errors, if they were errors, were not material to the outcome of the suit, and under Rule 434, T.R.C.P., furnish no proper basis for a reversal of the judgment. Appellant's tenth, eleventh, twelfth, fifteenth, sixteenth, seventeenth, eighteenth and twenty-second points are overruled. No action is taken as to the nineteenth point as it is not briefed.

The judgment of the trial court is affirmed.

Affirmed.

On Motion for Rehearing.

In his motion for rehearing appellant says that we erred in holding that the trial

court was authorized to render a judgment against appellant personally for $1,500, or any other sum. Appellant attacks our holding on the grounds that (1) no cause of action for such judgment was pled, and no evidence was introduced to support it; and (2) our holding is contrary to Art. 4619, V.A.C.S., which provides that community property shall be subject to the husband's control and disposition; and, though he is accountable for community property he may still have at the time a divorce is granted, the husband is not accountable to the wife for property he may have expended, or lost in trading, or otherwise prior to the divorce.

In her amended petition appellee pleads as follows: "That under orders of this court issued on July 16, 1957, defendant was ordered to make a sworn inventory of the community assets of the parties and his separate assets, and that said inventory which is a part of the papers in this cause is incorrect and incomplete * * * if the court finds that the defendant has disposed of community assets in fraud of said plaintiff, * * * plaintiff be given a monetary judgment against the defendant for the balance of her interest in the community property of the parties. * * * That on or about January 30, 1957 in cause No. 21115, entitled Marie Olene Pride v. James Hartwell Pride, in the 116th Judicial District Court of Dallas County, Texas, plaintiff filed suit for divorce against defendant, * * * defendant came to plaintiff's apartment and asked plaintiff to drop said divorce suit and preserve their marriage, and that defendant on that occasion in February, 1957, promised plaintiff to refrain and desist from the activities of defendant listed in paragraph 5 above if she would go back to him; that plaintiff, in good faith and in reliance on said promises and pleas of defendant, did consent to drop suit and live with defendant as man and wife and that said suit was dismissed on or about February 14, 1957. * * * plaintiff alleges that the defendant's reasons for asking for said reconciliation were to defraud plaintiff and to regain control of said monies in said bank and credit union, * * * plaintiff alleges that the representations made to her by the defendant from February 7, 1957 until February 15, 1957 were to defraud plaintiff of her community interest in said money as above stated, and that as shown above and based on actions of the defendant after February 15, 1957 until July 16, 1957, the defendant was not in good faith in effecting said reconciliation".

In other parts of her petition appellee sets out in detail the activities of appellant which she alleges constitute the fraud practiced by appellant to deprive her of her community interest in a bank account of approximately $2,000 and credit union deposits of approximately $2,000.

The testimony of appellant himself, though it is vague, general, inconsistent, evasive and contradictory, is sufficient to support appellee's allegations of fraudulent concealment. Immediately following the reconciliation with his wife and dismissal of the first divorce suit about February 15, 1957 appellant changed a joint bank account of more than $2,000 from the Grand Avenue State Bank to the Lakewood State Bank. However, he really deposited only $282 in the new bank account, and caused a cashier's check for $2,000 to be issued to himself. He kept this cashier's check on his person until July 16, 1957 the day his wife filed suit for divorce. On that day having been informed by his wife that she was filing suit for divorce, appellant cashed the $2,000 cashier's check, put $1,000 cash in a hole in his apartment floor, and put $1,000 cash in his pocket.

On April 18, 1957, fearing that his wife was about to file suit for divorce, appellant drew out $2,000 from a credit union account and hid the entire amount in cash in the hole in the apartment floor. He claimed that he later spent part of this money for "relaxation" in the form of short trips to Denton, Lake Texhoma, Waco and other places. All these trips except two were

completed in one day, that is the trips to the destinations and the return home were completed in one day. On each of two trips he spent one night away from home. These trips were taken while his wife, who was also employed, was on her vacation. The evidence furnishes no sufficient basis for holding that of the money he had hidden appellant spent any substantial portion for gasoline, oil and meals on the various trips.

On July 16, 1957 appellee filed suit for divorce and obtained a restraining order enjoining appellant from disposing of their community property. This restraining order was served on appellant at 3:45 o'clock P.M. that same day. It was also the same day that appellant cashed the $2,000 cashier's check, put $1,000 in his pocket, and hid $1,000 in a hole in the apartment, where he had already placed $2,000 cash—a total of $3,000 placed in the hole.

When he filed an inventory and appraisement of community property on July 26, 1957 appellant did not list, or mention the $3,000 he had placed in the hole in the floor of his apartment.

At the divorce trial on October 14, 1957 appellant testified concerning this hidden money as follows:

"The Witness: Am I permitted to ask you a question?

"The Court: Well, yes, go ahead and ask me.

"The Witness: Just a moment ago you quoted from your notes there that I said it was gone. I said I couldn't find it. That doesn't mean it wasn't there, I was just not able to find it. You said I said it was gone; I don't believe I testified to that, Your Honor. * * *

"Q. You know the money wasn't there when you went back—on August 16th? A. I do not know it wasn't there, I was unable to find it. * * *

"Q. * * * did you take any of that money out? A. I never removed any of that money.

"Q. Oh, you just left it there. Is it still there? A. It could be as far as I know."

We do not hold that a husband, as community manager, is ordinarily accountable to his wife for community property which he has expended or lost in trading, or otherwise prior to divorce. What we do hold is that the wife is entitled to a personal judgment against her husband when she pleads and proves, in connection with her suit for divorce, that her husband is fraudulently concealing, or has fraudulently disposed of community property in order to defraud her of her community interest. Swisher v. Swisher, Tex.Civ.App., 190 S.W. 2d 382, 384. In the Swisher case the court quotes Speers "Law of Marital Rights in Texas, 1929" at page 204, as follows: "The remedy of the wife who is defrauded by the husband's wrongful disposition of the community is not confined to a recovery of the property, for obviously this may be impossible, but there is no reason why she may not have her action against him personally for her loss. He would no more have the right fraudulently to appropriate her community property than her separate property."

We think the rule is especially applicable when, as in this case, the husband is under a restraining order forbidding him to dispose of the community property.

It has been held by our Supreme Court that when it is necessary for protection of property rights either spouse may sue the other. Trimble v. Farmer, Tex., 305 S.W.2d 157 (syl. 2).

Appellant's motion for rehearing is overruled.