Jeffrey V. MILLER, Appellant,

v.

Bernard ESUNAS, Appellee.

No. 173.

Court of Civil Appeals of Texas.

Tyler.

Jan. 27, 1966.

On Rehearing March 17, 1966.

Second Rehearing Denied April 7, 1966.

Wm. Andress, Jr., Andress, Woodgate, Richards & Condos, Dallas, for appellant.

W. S. Barron, Jr., and Bill E. Brice, Geary, Brice & Lewis, Dallas, for appellee.

DUNAGAN, Chief Justice.

This suit was instituted by appellant Miller against appellee Esunas in the 134th Judicial District Court of Dallas County,

Texas. The appellant in Paragraphs 1, 2 and 3 of his first amended original petition and as the basis for his cause of action against the appellee alleges:

"1.

"At all times hereinafter set forth defendant was a *practising* petroleum geologist, holding himself out to the public as qualified to give expert opinions on geological conditions and the advisability of drilling oil wells.

"2.

"In the fall of 1957 plaintiff became interested in procuring a lease on Section 39 in Block 4 of the H & T C Railway Company Surveys in Crane County, Texas, from Republic National Bank of Dallas, Trustee, the owner thereof but before entering into any such lease or undertaking any financial obligations in connection therewith, the plaintiff employed defendant to investigate said property and furnish him a report thereon.

"3.

"Thereafter, prior to 1 March 1958, defendant furnished plaintiff a written report, containing among other data the following statements:

" 'The following geological information was secured in order to classify the acreage as a drillable prospect:

" '1. Core Hole Information: (Yates). The Yates Marker was used in contouring this prospect, which resulted in a closed geological feature. At this point the writer wishes to call attention to the importance of a Yates closure in this portion of Crane County, Texas. To date, all structures with a Yates closure have resulted in an oil or gas discovery. For reasons unknown, the Yates structure reflects deeper structures, regardless of the

known unconformities that we encountered.'

"' 1. Queens
2. San Andres
3. Glorietta
4. Tubb Zone
5. Basal Permian
6. Devonian
7. Silurian-Montoya
8. McKee Sand
9. Waddell
10. Connell
11. Ellenberger

"Said report also listed the following as possible pay zones:

Approx. 2400'
" 2475'
" 3500'
" 4200'
" 4800–5300'
" 5400' (possibly eroded)
" 5500'
" 6500'
" 6950'
" 7150'
" 7300''

---

"Attached to and a part of said report was a map of Block 4 prepared by defendant with overlays, showing two core holes in the adjacent section 40 with elevations of 990 and 1003 feet. Such report contained a recommendation that a well be drilled to test the Ellenberger lime, approximately 7700 feet deep, at a recommended location of the Northeast quarter of the Northeast quarter of Section 39 of the H & T C Railway Company Surveys, Block 4, in Crane County, Texas."

Appellant further alleged in said petition that in reliance on such report, he secured a lease on said Section 39 from the Republic National Bank of Dallas, trustee of the Wirt Davis Estate, and that said lease required as a drilling covenant that the plaintiff should drill a well to the Ellenberger lime at the location recommended by appellee in the Northeast quarter of the Northeast quarter of Section 39. That appellant proceeded to drill said well, penetrating the Ellenberger lime to a depth slightly in excess of 7300 feet, without securing any showing or trace of oil and that there was no Yates closure encountered nor did plaintiff encounter the formation of McKee Sand, Waddell, Connell, Glorietta or Queens. That the well was plugged and abandoned as a dry hole at a depth of 7346 feet. As a result of his failure to encounter the Yates closure or the formations

reported by appellee as possible pay zones, he proceeded to investigate and was advised by the Railroad Commission of Texas in February, 1959, that no permits had ever been issued by the Railroad Commission of Texas for the drilling of any core holes on Section 40, and that there was no record in the files of the Railroad Commission of Texas showing that any such core holes had ever been drilled.

Appellant's Paragraph 7 of his first original amended petition alleges that:

"The defendant's report, therefore, purportedly based upon core hole information, and purportedly showing the location of core holes, was false, which fact was and must have been known to the defendant when he prepared and submitted his report to the plaintiff, knowing that the plaintiff would rely thereon and incur substantial expense and obligation as a result of such reliance, which plaintiff did."

In said petition appellant also alleged that in the acquisition of the lease, the arrangements for the financing of the drilling, and the drilling itself, the plaintiff expended the total sum of $102,744.73 which was a total loss to him, and which was caused by the fraudulent misrepresentations of the appellee, and that such sums were reasonably and necessarily expended in such operations, and was the reasonable costs thereof; and

that he is entitled to recover such sums, with interest thereon from the time of such expenditure.

This was a jury trial and the case was submitted to the jury on 13 Special Issues. The jury found in its answer to Special Issue No. 1 that appellee did not on or before March 1, 1958, represent to appellant, as a fact, that two core holes existed in Section 40 adjoining the lease in question. This thereby precluded the necessity of answering various conditional Special Issues which were additionally submitted thereon. The jury did further find, however, in its answers to Special Issues 8, 9, 10 and 11 that appellant did not hire or employ appellee to write and compile the geological report, but that they agreed with each other to enter into a joint undertaking for the drilling of the well in question; that such report was furnished by appellee to appellant as a part of such joint undertaking; and that same was not abandoned on or before March 1, 1958.

On the verdict of the jury, the court rendered judgment that appellant (plaintiff below) take nothing by his suit.

At the outset, we are confronted with the question of whether it is disclosed by the transcript that the jurisdiction of this court is invoked.

The judgment disposing of the case on the jury findings was signed on December 2, 1964. If an original motion for a new trial was ever filed and when is not disclosed by the transcript. The transcript does show the filing on December 31, 1964, of an amended motion for a new trial. This was more than 10 days after the judgment complained of by this appeal. The transcript shows that the amended motion was heard, considered and overruled on February 12, 1965.

The notice of appeal appearing in the transcript was filed March 11, 1965. The appeal bond was filed March 11, 1965.

■ It is elementary that when our jurisdiction is invoked, the transcript must disclose affirmatively that we have such jurisdiction and that if it does not do so, our duty is to dismiss the appeal. 3 Tex. Jur.2d, Section 383, page 641; Needham v. Austin Electric Ry. Co., 127 S.W. 904, (Tex.Civ.App.) 1910, n. w. h.; Selman v. Ross, 302 S.W.2d 752, (Tex.Civ.App.) 1957, n. w. h.

The facts in Selman v. Ross, supra, are on all fours with the facts in the instant case. The facts in that case reveal that the order appealed from was dated May 30, 1956; that the transcript did not disclose the filing of an original motion for new trial but did disclose an amended motion for new trial was filed on June 11, 1956; that the amended motion was heard and overruled on July 19, 1956, and notice of appeal was given in open court on the same day. The appeal bond was filed on August 6, 1956. The court in dismissing the appeal in the Selman case because the transcript failed to disclose affirmatively it had jurisdiction stated:

"It is now well settled that the filing of an original motion for new trial within a ten day period after the rendition of any judgment or order complained of is jurisdictional where the appeal is from an order overruling a motion for a new trial. A later filing is a nullity. Starr County v. Guerra, Tex.Civ.App., 282 S. W.2d 304, albeit such late filing may very well serve as a reminder to the trial court of his power over his own minutes within thirty days after the rendition of any judgment or order. It is true the trial court retains jurisdiction for thirty days after the rendition of any judgment or order to set it aside, with or without the filing of any motion for a new trial, but this fact is not relevant to the requisite steps required to give us jurisdiction even in a nonjury case such as the present, where no motion for a new trial is required for appeal, when the appeal is from the order overruling the motion for new trial as distinguished

from the order complained of. * * * (citing cases). It is possible that an original motion for new trial was actually filed sometime before June 11, 1956. It is equally possible that this is not so, or that the original motion, if any, was itself filed as late as June 11, 1956. The facts in this respect, so far as the transcript shows, are speculative.

" * * * If the appeal be considered as one from the order overruling the amended motion for new trial, it is equally evident that there is no affirmative showing that an original motion was filed within the ten day period contemplated by the mandatory provisions of Rule 329-b, Subsection 1, Texas Rules of Civil Procedure, fixing the time allowance for the filing of original motions for new trial."

As additional authorities, we cite Needham v. Austin Electric Ry. Co., supra; and Hartford Accident & Indemnity Company v. Gladney, 335 S.W.2d 792, (Tex.Civ.App.) 1960, writ refused, n. r. e.

▪ Moreover, it has been held in this state that Rule 329b, subd. 2 requires an amended motion for new trial be filed within 20 days of the original motion and the rule is mandatory; and that where an amended motion for new trial is filed more than 20 days after the original motion, the amended motion is ineffective, cannot be considered for any purpose, and is a nullity. Erwin v. Welborn, 207 S.W.2d 124, (Tex.Civ.App.) 1947, writ refused, n. r. e.; Arana v. Gallegos, 279 S.W.2d 491, (Tex.Civ.App.) 1955, n. w. h.; Valley Transit Co., Inc. v. Lopez, 263 S.W.2d 830, (Tex.Civ.App.) 1953, writ refused; Dyche v. Simmons, 264 S.W.2d 208, (Tex.Civ. App.) 1954, writ refused, n. r. e.; Traders & General Ins. Co. v. Scott, 189 S.W.2d 633, (Tex.Civ.App.) 1945, writ refused, w. m.

▪ As the transcript fails to disclose the filing of an original motion for new trial,

this court cannot ascertain whether the amended motion was filed in 20 days after the original motion was filed, if one was filed. Therefore, we are unable to determine whether the amended motion has been timely filed so that the assignments therein contained can be considered by this court on appeal.

The transcript fails to disclose affirmatively that we have jurisdiction of the appeal.

Appeal dismissed.

### ON APPELLANT'S MOTION FOR REHEARING

▪ Earlier in this term we dismissed this appeal because the transcript failed affirmatively to disclose that we had jurisdiction. Appellant later filed a supplemental transcript from which, in connection with the original transcript, it now appears that we do have jurisdiction. Appellant has moved for rehearing and that we set aside our former order dismissing the appeal. The motion is well taken and our former order is set aside and the appeal reinstated.

The appellant charges the appellee with fraud, alleging that the appellee's geological report, purportedly based upon core hole information and purportedly showing the location of core holes, was false, which fact was and must have been known to the appellee when he prepared and submitted his report to the appellant, knowing that appellant would rely thereon and incur substantial expense and obligation as a result of such reliance, which plaintiff alleges he did.

It is appellant's contention that the significance of a core hole is that it is a geological factor in establishing a geological "high." Significant information in this respect can also be obtained from a well which has been drilled, whether a producer or dry hole, where there is the additional advantage of the information obtained from

logs and tests, such as drill stem tests. Appellant testified at one point that the presence of absence of core holes in the report did not mean anything to him; he relied on appellee's conclusions based thereon.

The geological report is based in part on various geological information available to appellee, including logs from other wells, drilled in the area and certain core hole information. At the time appellee Esunas delivered the report to appellant Miller, and at numerous other times both before and thereafter, appellee told appellant that the core hole information had been passed on to him from other geologists; and that he could not prove that such core holes existed or give him any logs on them. Appellant admitted that appellee told him that the information had been given to him by some other geologist or engineer, but appellant maintains that appellee told him that he had to protect such party and could not divulge the source.

The parties were looking for high structure in the Yates Sand, a shallow non-producing sand which is indicative of closed geological features below in which oil may be trapped. It is shown that the appellee's projections as contained in such report were quite accurate. The sand in which they hoped to find oil—the Ellenberger—was encountered in the well at almost the exact depth as projected. Of course, all geological structures do not contain oil, which accounts for why, as the record shows, that there have been numerous geological successes which are oil failures. With appellant's experience in the oil business, he was aware of the obvious fact that no geologist could guarantee the finding of oil and appellee's report in question did not purport to do so.

A geological report is analogous to one who might be seeking the whereabouts of Sam Jones and in so doing receives information that Sam Jones maintains a home at Tyler, Texas, 1420 Oakwood Street, and that he might be found there. Perhaps upon arriving at this address expecting to find Sam Jones, you learn that he is not at home. This would not be evidence that the information given was false or misleading. Even though the informant had pointed out to his inquirer where he would be expected to find Mr. Jones, the only way that it could be ascertained whether or not Mr. Jones was there was by reaching the address previously given. A geologist can only, through his skill, training and knowledge of a particular area, supply information as to where structures, pinchouts, or other traps that may contain oil or gas may be found, but the only way of ascertaining if oil or gas is actually there is by drilling into such structures or formations.

Appellant's first two Points of Error read as follows:

"Point One: Esunas having admitted under Rule 169 that he showed the existence of the core holes on his written geological report furnished to Miller, this was conclusive as a judicial admission, and there was no evidence to sustain the jury's finding to the contrary in answer to Special Issue No. One.

"Point Two: Esunas having admitted under Rule 169 that he showed the existence of the core holes on his written geological report furnished to Miller, there was no issue of fact justifying submission of Special Issue No. One asking whether Esunas did represent as a fact to Miller that two core holes existed."

Appellant by his Points 1 and 2 contends that appellee's answers to appellant's requests Nos. 3 and 4 in his request for admissions, to the effect that appellee furnished appellant a written report containing core hole information and showing core holes, constituted a judicial admission by appellee and that he represented to appellant—*as a fact*—that core holes existed. Appellant therefore urges that Special Is-

sue No. One[1] should not have been submitted and that no evidence bearing on such issue should have been heard.

Appellee, by the way of counter points, contends that "The jury found on ample evidence that appellee did not represent to appellant—as a fact—that certain core holes existed, and the trial court properly rendered judgment in favor of appellee based thereon;" that "Appellee's answers to appellant's request for admissions pursuant to Rule 169 show that appellee fully disclosed to appellant that he was without knowledge as to the actual existence of core holes, and the trial court properly submitted the issue of misrepresentation to the jury." This contention we sustain.

■ The appellant's position is based upon the erroneous assumption that the questions propounded by him in his requests Nos. 3 and 4 embrace the ultimate issue submitted to and determined by the jury as to whether "On or before March 1, 1958, the defendant, Bernard Esunas, represented to Jeffrey V. Miller, *as a fact,* that two core holes existed in Section 40 adjoining the lease in question." There is a considerable amount of evidence (some of which came from appellant himself) that appellee repeatedly told appellant in connection with the report that the core hole information was something which he had been told by others and that he could not prove that such core holes existed. This evidence must be considered in answering the ultimate issue of whether appellee made the representation, as a fact.

This is in accordance with settled law on the subject. As stated in 25 Tex.Jur.2d 675, Section 39:

"An action for fraud may not, ordinarily, be based on statements that are expressly declared to be made merely on information. Such statements may, however, amount to positive statements of fact if full responsibility for their truth is assumed. * * *"

See also *Foster v. L.M.S. Development Co.,* 346 S.W.2d 387, 396, (Tex.Civ.App.) 1961, error refused, n.r.e., wherein it is held that:

"* * * Fraud is not to be predicated on statements expressly represented to be made merely on information. * * *"

The appellee in his brief says:

"Actually the ultimate issue of whether appellee represented the existence of core holes as a fact is possibly established by the evidence as a matter of law in favor of appellee rather than appellant."

Be that as it may, such issue was submitted to the jury and was answered adversely to appellant.

■ The issue as to whether appellee made a misrepresentation as a fact was one which formed a part of appellant's case and on which it devolved upon him to carry the burden. Appellant made no objection to Special Issue No. 1 as submitted by the trial court, either as to form or substance. The trial court properly submitted the ultimate issue, and in so doing he observed the mandate of Rule 279, Texas Rules of Civil Procedure, that "he shall submit the controlling issue[s]" without the necessity of submitting "other and various phases or different shades of the same issue." Neither party objected to such issue.

Appellee does not deny that he furnished the written geological report inquired about in the appellant's requests Nos. 3 and 4, nor did he take a contrary position at trial. The point is, however, that the matters inquired about do not embrace the ultimate issue of whether, under the evidence in this case, the particular representation was ·in fact made. Appellee's answer to appellant's

---

1. Do you find from a preponderance of the evidence that on or before March 1, 1958, the defendant, Bernard Esunas, representing to Jeffrey V. Miller, as a fact that two core holes existed in Section 40 adjoining the lease in question?
Answer "Yes" or "No."
ANSWER: No

request No. 5 clearly shows that appellee fully disclosed his lack of knowledge to appellant. Appellant's Points 1 and 2 are without merit and are overruled.

 Appellant by his Point No. 3 contends that "Miller having contracted with the landowner to drill the wells, the costs of which he seeks to recover from Esunas as damages for fraudulent misrepresentation, the source of his financing constitutes no defense available to Esunas, and evidence thereof was inadmissible and prejudicial." The jury's finding in response to Special Issue No. 1 that there was no representation as a fact that appellee represented to appellant that two core holes existed in Section 40 adjoining the lease in question, renders this point immaterial. In view of this finding of the jury, the error, if it is error, it is not material to the outcome of the suit, and under Rule 434, T.R.C.P., furnishes no proper basis for a reversal of the judgment. Pride v. Pride, 318 S.W.2d 715, (Tex.Civ. App.) 1958, no writ history. Error in admitting or excluding evidence becomes immaterial where the case does not turn on the excluded or admitted evidence, that is, where it is not material and does not affect the verdict and judgment rendered. Flores v. Missouri-Kansas-Texas Railroad Company, 365 S.W.2d 379, (Tex.Civ.App.) 1963, writ refused, n. r. e.; Gross v. Dallas Ry. & Terminal Co., 131 S.W.2d 113, (Tex.Civ. App.) 1939, writ dismissed, judgment correct. This Point is overruled.

Appellant by his Points 4, 5, 6 and 7 complains that the trial court required the plaintiff to give the defendant the benefit of his self-serving additions to the answer for request for admissions; would not permit the plaintiff to testify that the showing of core holes on the geological report was material and that he relied upon them; would not permit the plaintiff to explain the meaning of the technical exhibit concluding a portion of the geological report while permitting defendant to do so; and would not permit the plaintiff to refresh his memory of exact figures from five years before without

cluttering up the record with irrelevant instruments. We have carefully considered these Points and under the record in this case, we believe them to be without merit and each are overruled. We have likewise considered appellant's Points of Error Nos. 8 and 9 and the same are overruled for lack of merit.

Appellant had his day in court before a jury which found against him on the facts and we hold that the testimony was ample to support the jury findings.

The jury finding in response to Special Issue No. 1 alone is sufficient to preclude a recovery of damages by the appellant under the pleadings and evidence in this case.

Finding no reversible error in the record, the trial court judgment is affirmed.